Baldwin v. The St. Louis, Keokuk & Northern R'y Co.

mination we do not think the defendants can justly complain.

AFFIRMED.

BALDWIN v. THE ST. LOUIS, KEOKUK & NORTHERN R'Y CO.

1. **Expert Testimony:** WHEN NOT ADMISSIBLE: PROPER MANNER OF PILING LUMBER. The work of piling lumber does not in any proper sense involve the exercise of technical knowledge or skill; and to allow one experienced in such work to testify how he would have piled it in a certain case, or how, in his opinion, it ought to have been piled, was error, where the material question was whether or not it was so negligently piled that it fell upon and injured plaintiff.

2. **Evidence:** USE OF SHORT-HAND REPORTER's NOTES IN ANOTHER CASE: CODE, § 3777. Under the provisions of § 3777 of the Code, the short-hand reporter's notes of the testimony of a witness cannot be used on the trial of another cause, without first showing, as in the case of the use of a deposition, that the witness himself cannot be produced in court; and evidence that the witness was *reputed* to have left the state was not sufficient for the purpose.

3. **Master and Servant:** INJURY TO SERVANT THROUGH NEGLIGENCE OF FOREMAN: INSTRUCTION. While it may be conceded that a mere foreman, as the word "foreman" is generally understood,—that is as a laborer, with power to superintend the labor of those working with him,—is a co-employe so far as his own mere labor is concerned, for whose negligence in that capacity, resulting in injury to a co-employe, the master is not liable, yet an instruction asked in this case, to the effect that the master would not be liable for any negligence of the foreman, unless it was in the employment of incompetent men, or in the use of unfit machinery or appliances, *held* to have been properly refused.

4. ———: ———: NOTICE TO MASTER. In an action by a servant for injury sustained by the falling of a pile of lumber upon him, on the ground that the defendant was negligent in not having the lumber safely piled, if, as the evidence seemed to show, the lumber was safely piled in the first instance, but it became unsafe by the subsequent removal of lumber from the pile, it was incumbent on plaintiff to prove that the defendant, through some responsible officer or agent, had actual notice of the defect, or that it had existed for so long a time that the defendant should have discovered it in the exercise of reasonable diligence. *Case v. Chicago, R. I. & P. R'y Co.,* 64 Iowa, 762, followed.

| | |
|---|---|
| 68 | 37 |
| 79 | 311 |
| 68 | 37 |
| 83 | 111 |
| 68 | 37 |
| 92 | 342 |
| 68 | 37 |
| 93 | 129 |
| 68 | 37 |
| 98 | 214 |
| 100 | 448 |
| 68 | 37 |
| 105 | 213 |
| 68 | 37 |
| 107 | 257 |
| 68 | 37 |
| 124 | 42 |
| 124 | 46 |
| 124 | 662 |

*Appeal from Lee District Court.*

WEDNESDAY, DECEMBER 16.

ACTION for a personal injury. There was a trial to a jury, and verdict and judgment were rendered for the plaintiff. The defendant appeals.

*Anderson Bros. & Davis*, for appellant.

*Browne & Browne*, for appellee.

ADAMS, J.—This case is before us on a second appeal. The decision upon the former appeal is reported in 63 Iowa, 210. The evidence upon this appeal differs in several respects from the evidence upon the former appeal, but it is not important that we should set out the difference in detail. The plaintiff was an employe of the defendant, and at the time of the injury was engaged with one Lawrence in taking a stick of timber from a pile in the defendant's lumber-yard. While so engaged, either the same pile, or one standing next to it, fell, and several sticks of timber fell on the plaintiff, and caused the injury of which he complains. He avers that at the time of the injury the pile which fell was not properly piled, and the evidence, we think, so shows. The cross-strips were not long enough to bind the different tiers together. The evidence tended strongly, if not conclusively, to show that there was no fault in the original construction, but that several of the cross-strips had been cut to enable employes of the defendant to take timber out of the pile, and proper steps had not been taken to bind the tiers together again.

I. For the purpose of showing that the pile at the time of the injury was not in a safe condition, one Scroggs, an experienced man in piling lumber, was allowed to testify, against the objection of defendant, as to how he would have piled the timber. The admission of his testimony is assigned as error.

1. EXPERT testimony: when not admissible: proper manner of piling lumber.

The plaintiff's object was, of course, to show what in the opinion of the witness was the proper way of piling such timber. The objection urged by the defendant is that the subject of the witness' testimony was not such as to justify the admission of expert evidence; and in this we have to say that we think that the defendant's position is correct. Where the construction of a given pile of timber is properly explained, it appears to us that a jury of men not especially experienced in piling timber would have no difficulty in forming an opinion for themselves as to the liability of the pile to fall and injure a person who should be near it. Such work, it seems to us, does not in any proper sense involve the mystery of technical knowledge or skill. If we are right in this, it follows that it was not competent for the witness to testify as to how he would have piled the timber, or how, in his opinion, it ought to have been piled, and the testimony was improperly admitted.

II. The plaintiff was allowed to read, against the objection of the defendant, the testimony of one Hosmer, as 2. EVIDENCE: practice: use of short-hand reporter's notes in another case: Code, § 3777. the same was shown by the transcript of the short-hand reporter to have been taken on a former trial. The admission of the evidence is assigned as error. The question raised calls for a construction of a portion of section 3777 of the Code. It is provided in that section that the short-hand reporter's notes, or a transcript thereof, duly certified by the reporter, shall be admissible in any case in which the same are material and competent to the issue therein, with the same force and effect as depositions, and subject to the same objections, as far as applicable. The plaintiff contends, as we understand, that under that section the notes, or transcript thereof, may be read in evidence without any showing of excuse for not producing the witness in court. But, in our opinion, his position in this respect cannot be sustained. It often happens that the force of a witness' testimony is greatly impaired by his manner or appearance on the witness stand. Prob-

ably this is usually so where a witness undertakes to testify to something which is untrue, or which he does not fully understand. All testimony, therefore, should be introduced by examination of the witness in court, unless sufficient reason is shown for dispensing with his presence. Where a witness who testified upon a former trial has died, it is competent, at common law, to show what his testimony upon the former trial was. *Mayor of Doncaster v. Day*, 3 Taunt., 262; *Glass v. Beach*, 5 Vt., 172; *Lightner v. Wike*, 4 Serg. & R., 203. The same is true where the witness has become insane, and in some other cases. See Greenl. Ev., § 163, and cases cited. Under our system of official short-hand *verbatim* reporting, the legislature has gone further, and has provided that the reporter's notes, or his extended transcript of them, may be introduced, where the evidence is material and competent, subject only to the same objections which might be made to the witness' deposition, so far as applicable. But one of the objections which may always be urged against a deposition is that there does not appear to be any statutory ground for the introduction of the witness's testimony by deposition. It is true, neither the notes or transcript constitutes a deposition; nor is the testimony taken down by the reporter with specific reference to its use upon a subsequent trial as a deposition. Such being the case, it is not to be expected that the notes or transcript will show any statutory ground for their use as a deposition. But it does not follow that such ground may not be shown otherwise, and, in our opinion, it should be. We cannot think that the legislature designed to go further than to allow the reading of the notes or transcript as a deposition, where a deposition in form could have been taken.

It is contended, however, that even a deposition may be read in evidence where no statutory ground appears for taking it; and in support of such rule *Cook v. Blair*, 50 Iowa, 128, is cited. But in that case no objection was made at any time that there was a want of statutory

ground for taking the deposition. The objection made was that what might have been good ground at the time the deposition was taken did not exist when the deposition was offered; but the witness, not being in court, it appeared to us that the deposition was properly ·allowed to be read. There may probably be a waiver of objection for want of statutory ground. Where a deposition is taken upon notice, and the adverse party appears and does not object to the want of statutory ground, as we think in practice is often the case, there would, we think, be strong ground for contending that objection for want of such ground was waived. But conceding that such is the rule, it could have had no proper application to this case. It does not appear that the defendant was notified that the plaintiff would offer to read the notes or transcript as a deposition until the offer was made, and until then the defendant had no reason to object.

. One other position taken by the plaintiff remains to be noticed. He attempted to show that the witness had become a non-resident of the state. For this purpose he introduced as a witness one Brown, who testified that, by reputation, the witness Hosmer had left the state. But, in our opinion, the fact that the witness had left the state should have been established by the testimony of some one who knew the fact, or could testify to circumstances within his knowledge which would justify the inference of such fact. We know no rule by which the fact could be found from common report or reputation.

III. The evidence showed that one Coller had charge of the yard in which the timber was piled. As touching Coller's duties, the defendant asked the court to instruct the jury " that, although they may believe from the evidence that Coller was foreman of the yard of defendant, with power to employ and discharge hands, yet, unless they further believe from the evidence that plaintiff was injured by reason of some negligence of Coller in the employment of unfit or incompetent men · to do the

3. MASTER and servant: injury to servant through negligence of foreman: instruction.

work assigned them, or by the use of unsafe or unsuitable machinery or appliances used in doing said work, provided by said defendant, then the verdict must be for the defendant." The court refused the instruction, and the refusal is assigned as error. It is contended by the defendant that the jury might find, under the evidence, that Coller was, in respect to some of his duties at least, a mere foreman, and that, if there was no negligence upon his part, except such as he might have been guilty of when acting as mere foreman, the plaintiff could not recover. In our opinion, the instruction was properly refused. It may may be conceded that a mere foreman, as the word "foreman" is generally understood,—that is as a laborer, with power to superintend the labor of those working with him,—is a co-employe so far as his own mere labor is concerned. *Peterson v. Whitebreast Coal & Mining Co.*, 50 Iowa, 673. But the instruction is too sweeping. It could be sustained only upon the ground that there was no evidence tending to show negligence on the part of Coller, or any one else acting as a superior. Now, as we have observed, the evidence showed that Coller had charge of the yard. If his charge involved the duty of maintaining an inspection of the piles in reference to their security against falling upon those employed near them, he was, we think, in the performance of such duty as superior. The close question perhaps is as to whether his charge involved such duty, but we think that the jury might infer from the circumstances that it did. The jury must have found that the defendant, when proceeding to work near the pile of timber, was not bound, as a matter of reasonable care, to inspect it upon all sides in order to ascertain whether it was so improperly constructed as to be liable to fall, and we are not prepared to say that the finding was not warranted. It is true that the general rule is that the employe takes the risk of patent defects, unless he objects to them, or has a promise of amendment. Probably, if the defects in this case had been apparent upon that side of the pile where the

plaintiff was at work, they should have been considered
patent, and that the plaintiff would not be allowed to say
that they were not in fact observed by him. But the evi-
dence shows that the defects could not be seen upon that
side. We are not prepared to say, therefore, that, as a
matter of law, the plaintiff was negligent in not discovering
them. If he was not, it would seem to follow that a duty in
that respect rested upon the defendant to be discharged by
the person in charge of the yard. Neither the expense nor
difficulty of inspecting the pile appears to have been such
that an exposure like the one in question should be regarded
as practically unavoidable. We think that the defendant
should have seen, in the first place, as perhaps it did, that
the piles were originally properly constructed; and if, as the
evidence shows, the piles afterwards sometimes became dan-
gerous by reason of a custom among the employes of cutting
the cross-strips to enable them to take out sticks of timber,
the defendant should have exercised reasonable diligence in
seeing that the piles were rendered safe again by a supply of
other cross-strips of proper length. Such being our view in
regard to the duty of the defendant, we think that the
instruction asked and refused could not properly have been
given.

IV. The court gave an instruction in these words:
"Before the company can be held for negligence, it must
4. —: —: have had notice of the dangerous condition of
notice to
master.	the pile of timber, or, by the exercise of ordinary
care, have been able to know it, in which case notice will be
presumed; but if the timbers were piled by the employes of
the defendant, under its direction, this will be notice of itself
sufficient to bind the defendant for negligence." The giving
of this instruction is assigned as error. It is objected that
the court erred in its rule in respect to the notice that would
bind the defendant. It seems probable that the idea which
the court had in mind was that if the defendant, by its
employes, constructed the piles originally, and they were

defective in the original construction, the defendant would be deemed to have notice of such defects. But the evidence tended very strongly to show that the pile in question was constructed properly originally, and became dangerous afterwards by reason of the cutting of the cross-strips. The court seems to have overlooked this fact. Notice of subsequently accruing defects could not arise out of anything which the defendant had to do with the original construction. If the the pile fell by reason of such defect, as seems probable, it was incumbent upon the plaintiff to prove that the company, through some responsible officer or agent, had actual notice of the defect, or that it had existed so long that the defendant should have discovered it in the exercise of reasonable care. The mere fact that the accident happened did not show a want of such care. *Case v. Chicago, R. I. & P. R'y Co.*, 64 Iowa, 762. In giving the instruction it appears to us that the court erred.

Several other errors are assigned; but as to some of them we think that our views are sufficiently expressed in what we have said as to the others. We may say that probably the questions presented will not arise upon another trial.

REVERSED.