Bank of Monroe v. Gifford.

THE SAME.

---

THE BANK OF MONROE v. GIFFORD.

1.  Sureties: COLLATERAL SECURITY : "CONTROL" OF IMPLIES DELIVERY AND ACCEPTANCE. In an action against the surety upon a promissory note, the defense was that defendant was discharged by reason of the surrender by the plaintiff to the principal debtor of certain bonds which it held as collateral security; and the court instructed that if plaintiff "controlled" such bonds at the time the

Bank of Monroe v. Gifford.

note was executed, as security for the debt secured by the note, and afterwards surrendered them without defendant's consent, then defendant was discharged. *Held* that the word "controlled," as used, implied a delivery of the bonds to plaintiff and an acceptance of them by it.

2. ———: DISCHARGE BY SURRENDER OF COLLATERALS: PAYMENT OF DEBT BY NOTE. The giving and accepting of a promissory note for a prior debt will not be regarded as payment thereof, unless there be an agreement of the parties to that effect (see opinion for citations); and where the note is signed by one as a surety, and the creditor at the time holds collateral security for the debt, the agreement to make the note an absolute payment of the debt, so as to justify the creditor in surrendering the collateral security held for that debt, must, in order to bind the surety, be assented to by him; otherwise the surrender of the collaterals without his consent will release him from obligation as surety.

3. **Practice**: SENDING JURY BACK TO AMEND ANSWER TO QUESTION. Where a jury misconceives the true import of a special interrogatory, and fails to answer it according to its true intent, the court may submit a supplementary interrogatory and send the jury back to answer it. (See opinion for citations.)

4. **Evidence**: RECORD OF TESTIMONY AT FORMER TRIAL. The record of the testimony of witnesses at a former trial is admissible in a subsequent trial of the case, where the witnesses reside in a county of the state other than that in which the trial is pending. (See opinion for statutes and cases cited.)

5. ———: COPIES OF MORTGAGE RECORDS. Duly authenticated copies of the record of mortgages and conveyances are admissible as tending to show the insolvency of the grantor therein.

6. **Sureties**: DISCHARGE BY SURRENDERING COLLATERALS: TO WHAT EXTENT DISCHARGED: OTHER SURETIES. Where a note with a surety is given for a portion of a prior debt, for which the creditor holds bonds secured by mortgage as collateral security, and he surrenders such collaterals without the surety's consent, the surety is discharged to the extent of the value of the bonds so surrendered; and such value is to be determined in the county where the mortgaged land lies, rather than in that where the trial is pending, and is to be estimated at the time of the surrender, and not at the time of trial; and the fact that there are other sureties on other notes given to secure portions of the same prior debt, which sureties are not in the case, does not affect the surety's right to be discharged to the full value of the surrendered bonds.

7. ———: ———: ESTOPPEL TO DENY VALUE. In such case, where the creditor has recognized the value and validity of the collaterals, and has received money thereon, which should have been applied on the secured debt, he cannot claim that the surety should not be released, on the ground that the bonds were issued in excess of corporate power, and, therefore, were invalid and of no value.

Bank of Monroe v. Gifford.

*Appeal from Jasper District Court.*—HON. W. R. LEWIS, Judge.

FILED, FEBRUARY 3, 1890.

ACTION upon a promissory note. There was a judgment upon a verdict for defendant. Plaintiff appeals. The facts, so far as they are necessary to be stated for a proper understanding of the questions decided, appear in the opinion. The case has twice heretofore been in this court. See 65 Iowa, 692; 72 Iowa, 750.

*Winslow & Varnum* and *J. Kipp & Son,* for appellant.

*J. F. Lacey, W. R. Lacey* and *Alanson Clark,* for appellee.

BECK, J.—I. The questions arising in the case will be considered in the order of the argument, as far as practicable. The facts will be stated, as their consideration becomes necessary in the discussion of the questions determined.

The evidence shows that one R. C. Anderson was the cashier of plaintiff, and at the same time was the president and general manager of a corporation engaged in mining coal, called the "Anderson Bros. Mining & Railway Company." He appropriated the funds of the bank to the use of the corporation, and, his improper practice in this regard being discovered, he was required to secure and make good the amount of his defalcation to the bank. He induced defendant to unite with the Anderson Bros. Mining and Railway Company in executing a note to the president of the bank, to be used in adjusting the claim of plaintiff for the indebtedness arising from the defalcation. He induced two other persons to execute, with the mining and railway company, two other separate notes, for like amounts, to be used for the same purpose. The note

signed by defendant was delivered to the president of the bank, and by him transferred to the plaintiff. As a defense to the action, the defendant pleaded that, at the time the note was executed and transferred to the bank, it held certain bonds of the principal of the note, the mining and railway company, of value greatly in excess of the amount of the note executed by defendant as surety, which were, without defendant's knowledge or consent, released from the claim held by plaintiff thereon, and delivered to the mining and railway company, which was then, and ever since has remained, insolvent. By this unauthorized and unjust act defendant sustained damage exceeding the amount claimed upon the note.

The defense set up by this answer presents all questions arising on this appeal, the court below so ruling as to withdraw other defenses pleaded from the jury. The jury found a general verdict for defendant, and found specially that the defendant signed the note as surety of the Anderson Bros. Mining and Railway Company; that the note was not taken in absolute payment of the debt of the company to the plaintiff, but only as a change of form thereof; that plaintiff held at the time, as security for the Anderson debt, the bonds of the mining and railway company; that these bonds, at a date five months or more subsequent to the execution of the note and its delivery to plaintiff, were surrendered to the Andersons or the mining and railway company; that the market value of the bonds was a sum largely in excess of the note in suit; that when the bonds were surrendered the debt for which they were held as security had not been paid, and that when plaintiff surrendered the bonds it received therefor an amount in excess of the sum due upon the note. The jury also specially found that Anderson, in taking the bonds as security for the debts of the company, acted for both the bank and the company; that after the officers of the plaintiff learned of the deposit of the bonds, they retained and controlled them; that the

bonds were secured by mortgage; that about five months after the delivery of the bonds to the plaintiff it consented that Anderson should take them; that at the time plaintiff knew that defendant was surety on the note in suit; that at the time they were of the face value of fifteen thousand dollars, and of the market value of six thousand dollars; that, a few days before the bonds were surrendered by plaintiff, it received a sum thereon, stated in the subsequent findings as exceeding 'the amount due at the time upon the note in suit, and that the mining and railway company was at the time, and still is, insolvent.

The foregoing statement of the findings of the jury renders unnecessary a further statement of facts in this proceeding. As applicable to the issues and facts involved in the defense submitted to the jury, the court below gave the following instructions:

"3. If you find from the evidence that prior to the execution of the note in suit the principal maker, Anderson Bros. Mining & Railway Company, was indebted to the plaintiff, on account, in about the sum of thirteen thousand, seven hundred and eighty-four dollars; that the note in suit was given, not in part absolute payment of such indebtedness, but to change its form, or the evidence of it, or as additional security to the extent of the note; that the defendant Gifford was only surety on said note; that at the time of taking said note the plaintiff controlled any alleged mortgage bonds, or bonds secured by mortgage on property, no matter by whom the bonds were made or signed, as security for the pre-existing debt, if such bonds were of any value as such security; and if the plaintiff knew that Gifford was only surety on the note, it had no right to release or surrender its control of the bonds without the consent of the defendant Gifford; and, if you find that it did so without receiving in their stead something else of equal value as security, he is released from liability on the note to the extent of the loss resulting from such surrender, which is to be determined by the value of the security, as such, at the time

Bank of Monroe v. Gifford.

it was surrendered.  If such bonds were those of the principal maker of the Gifford note, Anderson Bros. Mining & Railway Company, and were not secured, their release or surrender would not work Gifford's release to any extent whatever; and although they may have been secured by mortgage on property of some value, and may have been in a box in plaintiff's safe, if they had not been accepted, or in some manner been brought under the control of the plaintiff as security for the debt mentioned, it was not bound to hold them.

"4.  By the word 'payment,' as it is used in paragraph three of these instructions, is meant absolute payment; such payment as finally ended the part of debt or debt paid.  In the absence of any agreement between the debtor and the creditor, a note, even though signed by another as surety for the principal debtor and the principal, which is given for a pre-existing debt, is no more than a conditional payment, and the creditor holds both ; but if they at the time so agree, or the creditor so accepted the note, the new evidence of debt puts an end to the old, and works and is absolute payment of it ; and in such case the creditor is not under obligations to hold, for the benefit of the surety, any security which the creditor may have held for the payment of the debt in its old form, while in the first, or the case of a conditional payment, the creditor is under such obligation.  The plaintiff in this case has the burden to show that the note in suit was taken and accepted by it in absolute payment of so much of the Anderson Bros. Mining & Railway Company's pre-existing debt, but, if it does this by the preponderance of the evidence, your verdict will be for the plaintiff for the full amount of the note ; as, if the defendant's (Gilford's) note worked an absolute payment to its extent of the old debt, any security held by the plaintiff remained as such for the payment of the unpaid portion, and not for the benefit of the defendant.  If, however, the defendant's note worked no more than conditional payment of so much of the old debt, and the plaintiff

was thus under obligation to hold securities in its hands for the defendant's benefit, a subsequent payment, although absolute, of that part of the old debt which was not so conditionally paid by the defendant's note, did not release the plaintiff from the duty to hold the security, if any it had, for the defendant's benefit.

"5. If you find from the evidence that at the time any bond or bonds in question were deposited by R. C. Anderson in the safe of the plaintiff, if such deposit was made as security of a ·debt ·of Anderson Bros. Mining & Railway Company, he was the president and manager of this company, and also the cashier of the plaintiff bank, and that he undertook to act for both, and to make the deposit for the one, and to accept such deposit for the other, neither was bound by what he did; and, if nothing more was done by way of deposit and acceptance of the bond or bonds, your verdict will be for the plaintiff; or, if afterwards when the other officers of the bank first knew of what Anderson had done, they refused to accept or take control of the bonds, and they never did so, although permitting them to remain in the safe in a box with papers belonging to Anderson or Anderson Bros. Mining & Railway Company, your verdict will be for the plaintiff. If, however, when the other officers of the bank knew of what Anderson had done, they accepted the bond or bonds, or took control of them, although expressing themselves as dissatisfied therewith, and demanding other and additional security, the bonds were under the plaintiff's control, which means that they had actually passed from Anderson's or Anderson Bros. Mining & Railway Company's possession to the possession of the plaintiff; that something had actually been done to indicate that there had been a change of possession from said company to the bank; and if there was nothing done to indicate such change of possession, but the bonds or the bond remained afterwards in precisely the same situation as when in the possession of Anderson or Anderson Bros. Mining & Railway Company,

although in a box in the plaintiff's safe, it cannot be said that such bonds or bond was under the control of the plaintiff as security.''

The consideration of these instructions, and the special findings of the jury, will dispose of the main, if not the controlling, questions in the case.

II. We will proceed, now, to the consideration of objections to the foregoing instructions presented in argument by plaintiff's counsel. Criticisms of these instructions are based upon the use of the word "control," as applicable to plaintiff's possession of the bonds alleged to have been held by it as collateral security on its claim against the mining and railway company. In the first instruction, in stating the issues upon the answer setting up the defense of suretyship and the holding and surrender afterwards of the bonds, the court states, in effect, that the answer alleged that when plaintiff "took said note it controlled certain mortgage bonds of the value of seventy-five hundred dollars, which had been deposited to secure the payment of both the old debt and said note." In the third instruction this language is used : " At the time of taking said note, the plaintiff controlled any alleged mortgage bonds * * * as security for the existing debt.'' The word "control," it will be noticed, occurs near the end of the fifth instruction. The effect of the instruction is to direct the jury what would amount to an acceptance of the bonds, or the "control" of plaintiff, as security. It is very plain that the control of papers as security on a debt implies such a possession thereof under a delivery to the holder, and such acceptance, as will perfect the security. How could one "control as security" paper unless there had been an acceptance thereof as such? Counsel's criticism, to the effect that the instruction, by the use of the word "control," implies that the bonds should be regarded as security, without any showing of an acceptance thereof, demands no further attention.

1. SURETIES : collateral security: "control" of implies delivery and acceptance.

III.  It is insisted that the first instruction, in stating the issues, erroneously states that the bonds were held as collateral security for the debt of the mining company, existing both before and after the note was given.   It is said that it is not alleged in the answer that the bonds were security on the debt before the note was executed, *i. e.,* on the old debt.   But, in alleging that the bonds were held as collateral for the debt before the note in suit was executed, it plainly affirms the bonds were security on the old debt.   Some other objections, based upon other criticisms of the instructions, do not demand attention.

IV.   Counsel for the plaintiff maintain that the special finding of the jury, to the effect that the note was not accepted as payment of the debt, is without the support of the evidence, and on that ground should have been set aside.   The giving and accepting of a promissory note for a prior debt will not be regarded as payment thereof, unless there be an agreement of the parties to that effect.   *Farwell v. Salpaugh*, 32 Iowa, 583; *McLaren v. Hall*, 26 Iowa, 297; *Gower v. Halloway*, 13 Iowa, 154; *Port v. Robbins*, 35 Iowa, 208.   It cannot be said that the finding of the jury as to the non-existence of an agreement or an arrangement to the effect that an acceptance of the new note should be a discharge of the debt is so unsupported by evidence as to demand that the verdict be set aside.   There is evidence tending to support the conclusion that it was the purpose on the part of the officers of the plaintiff that the debt should be discharged on the acceptance of the note.   This evidence is weakened by its want of probability, for we can see no reason that prompted plaintiff to discharge its debtor, and look alone to the new security.   Such things are unusual.   We discover no evidence tending to show an agreement on the part of defendant and the mining company that the old debt should be discharged. The rule under consideration is intended for the benefit of the surety.   He is entitled to the protection secured by the

2. —— : discharge by surrender of collaterals ; payment of debt by note.

law, the rules whereof favor him. When he becomes surety, his right to require all prior securities to remain unchanged becomes fixed. He, it is presumed, entered into the contract, relying upon the protection secured by the law. Can the creditor and the principal, or either of them, assent to a change of securities so as to prejudice the surety? Surely, the law will not, leaving a surety to the mercy of the creditor or principal, permit either or both of them to surrender his rights upon their united or separate agreement. In the case before us there is not one word of evidence tending to establish his consent to the discharge of the debt of his principal when he became a surety.

V. Another view leads to the conclusion that the facts fail to show a lawful release of the bonds held as security by plaintiff. The bonds were in the hands and under the control of plaintiff, as security for the debt, before the note was executed. They remained in plaintiff's hands for four months, and were finally surrendered upon realizing thereon a sum equal to the amount due on the note in suit. They continued to be security upon the claim of plaintiff. They were treated by all concerned as such. Of course, they could not be relieved by plaintiff without the consent of defendant. No such consent was given. This position is in accord with the instructions given the jury. The jury were authorized by the evidence to find the facts we have just stated, and, as a conclusion therefrom, that the bonds were held as security when defendant signed the note, and were not surrendered with his knowledge and consent.

VI. Counsel insist that there is no evidence that the bonds were ever accepted as collateral security by the bank. It is sufficient to say that the evidence shows that the bonds were under the control of plaintiff, were regarded and treated as collateral, and finally, in order to secure their discharge, plaintiff consented that they should be delivered to Anderson or the mining company. Other objections to the findings, on the ground that they are in conflict with the evidence,

demand no separate consideration.   We may dispose of them by the remark that the general and special verdicts are all sufficiently supported by the evidence.

VII.   One of the interrogations, the fourteenth, which was submitted to the jury for a special finding, is in the following language:   "Did the plaintiff receive anything for the bond or bonds in question when same was taken from its control or safe?"   They answered in these words:   "They did, a few days before." After the verdict and special findings were read, the court, upon its own motion, directed the jury to retire, and answer this interrogation:   "What was the value of that which you answer, to interrogation fourteen, the plaintiff received for the bond or bonds, when same were taken from its control or safe?"   The answer to this interrogation was:   "Twenty-seven hundred and eighty-four dollars."   The fourteenth interrogatory was doubtless intended to elicit an answer showing the amount of money or value of the thing received.   In failing to respond, the jury, through inadvertency, omitted to state a material point of the finding required. This was an omission and mistake, which the court was authorized to require them to correct by directing them to answer as to the amount of money or value of the thing received.   *Lee v. Bradway*, 25 Iowa, 216; *Higley v. Newill*, 28 Iowa, 516; *Hamilton v. Barton*, 20 Iowa, 505.

*3. PRACTICE: sending jury back to amend answer to question.*

VIII.   The defendant submitted eighteen interrogations, which it asked the jury should be required to answer in special findings.   The court refused to require the questions to be answered.   Of this defendant now complains.   Many of the facts sought to be elicited were called for in the questions submitted to the jury by the court.   Other facts sought by the questions refused were immaterial, or of a character which did not require that they should be presented in special findings.

IX.   Counsel argue that plaintiff was a good-faith holder of the note, in the usual course of business, and,

therefore, ought to recover on it. If counsel's position as to the fact be admitted, yet it does not follow that his conclusion of law as to the right of plaintiff to recover, in view of other facts of the case, is correct. Defendant was a surety on the note, which was known to plaintiff when it received the papers. These facts are contemplated in the instructions, and must have been found by the jury in the general verdict. The law as to the rights of sureties protects defendants, for the reason that plaintiff took the note with the knowledge that defendant was surety thereon. This view disposes of all of counsel's arguments based upon the position that plaintiff was a good-faith holder of the note.

*X.* At the trial the evidence of certain witnesses examined at a prior trial, which was taken in short-hand and made of record in the case, was admitted against the objection of plaintiff. It was shown that the witnesses lived in a county of the state other than the county wherein the trial was had. The evidence was rightly admitted. Code, secs. 3721, 3777; *Baldwin v. Railway Co.*, 68 Iowa, 37; *Fleming v. Town of Shenandoah*, 71 Iowa, 456.

4. EVIDENCE: record of testimony at former trial.

*XI.* Defendant, against plaintiff's objection, was permitted to introduce in evidence certain copies of the record of conveyances and mortgages duly authenticated by the county recorder. The admission of this evidence is now complained of as error, for the reason that no ground was shown for the admission of copies of the record. It does not appear for what purpose copies of the record were admitted. They would surely be evidence of the condition of title to property, and incumbrances thereon, which would tend to show the insolvency of the mining company which was in issue in this case; for, had it been solvent, no damages would have resulted to defendant by the release of bonds held as security. There was no error in admitting the evidence.

5. ——: copies of mortgage records.

*XII.* Counsel discuss at length the question involving the amount of damages plaintiff is entitled to

6 SURETIES: discharge by surrendering collaterals: to what extent discharged: other sureties.

recover. The value of the bond at Oska-loosa, it is insisted, is erroneously shown, instead of the value in the county where the suit was brought and tried. But the land covered by the mortgage securing the bonds was situate in Mahaska county. Surely in that county inquiry should be made as to the value of the bonds.

The bonds, when surrendered by plaintiff, were worth six thousand dollars. But counsel for plaintiff say that, as defendant had no right of action at that time, the value of the lands at that date cannot be considered in determining defendant's damages. But, in our view, the value of the bonds, when disposed of, determined the amount of damages; for their disposition, without regard to the rights of plaintiff or defendant at that time to bring action in regard to them, fixed their liability for the value of the bonds at that time. Plaintiff could have realized the value of the bonds at the time they were disposed of. Its duty to the sureties demanded that it should not suffer the bonds to escape liability for the debt for which defendant was surety, and, if plaintiff had the power to surrender the bonds, which it did possess, for it did surrender them, its duty was to see that the surety had the benefit of the bonds to the extent of their value.

Counsel present an ingenious argument to establish the proposition that, as there were other sureties who, with defendant, were bound for eleven thousand dollars, defendant, who was bound but for twenty-five hundred dollars, can recover no more than a proportionate amount of the six thousand dollars to which he would be entitled. The reply to this is that the other suits are not before us. We are not charged with settling the rights of defendant, as affected by the rights and claims of other suits. We know not that the claims in these others suits have been or ever will be enforced. In short, we cannot defeat defendant's rights on the ground that other persons, who are not parties to this

suit, could have, or may hereafter claim that they were entitled to, a portion of the proceeds of the bonds.

XIII. It is urged that the record shows that the bonds issued by the mining company, which were held by plaintiff, were issued in excess of the corporate power of the mining company, and, therefore, void. The conclusion is insisted upon that defendant cannot, therefore, recover damages for the release of these bonds. The plaintiff has recognized the bonds as valid,—has received money for them. It does not deny that they could have been converted into money. It cannot now prescribe for defendant a remedy it refused to take. It cannot say the bonds were valueless when it received and held money realized from them, which ought to have been appropriated to protect those who had become sureties for the mining company. Many other points are made by plaintiff's counsel, and supported by arguments. We do not consider them, for the reason that, in our judgment, they do not demand discussion in this opinion, as no other than familiar rules of the law are involved therein. In our opinion, the judgment of the district court ought to be                    AFFIRMED.

7. ——: ——:
estoppel to
deny value.