ROSA E. ROBINSON, Appellee, v. CHARLES T. CRAVER, Appellant.

88  381
93  180
88  381
108  66
88  381
f131 204
131 205

1. **Evidence**: LEADING QUESTIONS.    The question, "Do you know whether or not he (the defendant) bought his father's homestead," directed to the plaintiff, is not objectionable as being leading, nor as calling for a conclusion.

2. **Breach of Promise of Marriage:** EVIDENCE: EFFECT UPON PLAINTIFF. In a breach of promise case, the wounded feelings, mortification and pain of the plaintiff, resulting from the defendant's breach of the contract, are all proper to be shown as elements of damage. Accordingly, where the defendant had married another, it was proper to ask the plaintiff how it affected her when she heard that he was married.

3. ———: ———: DECLARATIONS OF PLAINTIFF AFTER BREACH. The declarations of the plaintiff in such case, after the defendant has married another, as to her feelings toward him, are not admissible against her, where there is no offer to show that the declarations related to her feelings prior to the breach.

4. ———: ———: CONDUCT OF PLAINTIFF PRIOR TO BREACH. Evidence of the conduct of the plaintiff in such case relating to the time covered by the engagement, or to a time when first informed of the fact that her intended husband had married another, is admissible to prove her consent to the alleged contract of marriage.

5. ———: ———: CROSS-EXAMINATION. The plaintiff's brother having testified that, while the defendant was keeping company with his sister, no one else was going with her, *held*, that it was error, on cross-examination, to exclude the question whether the witness had not during that time, and at a certain time and place, told the defendant that the plaintiff had made a "mash" on another man.

6. ———: ———: PRIOR ASSOCIATIONS WITH OTHER MEN: DAMAGES. It is not competent in such case, even as relating to the amount of damages, to show that the plaintiff, prior to her association with the defendant, had kept company with another man, especially when there is no showing that such prior association was of anything more than a friendly nature.

7. ———: ———: DECLARATIONS OF PLAINTIFF AFTER BREACH. The declarations of the plaintiff in a breach of promise case, made after the breach, are admissible against her if they relate to her feelings toward the defendant before the breach, and show that she did not then care for him, but only for his money; but if they relate merely to her lack of regard for him after the breach, they are immaterial.

8. ———: PLEADING: INSTRUCTIONS TO JURY. Where the plaintiff alleged a promise of marriage, and a breach thereof, and the answer was merely a denial of the promise, and there was no evidence of any abandonment of the alleged contract until after the defendant had married another, *held*, that an instruction which ignored the thought that the contract, though made, might have been annulled with the plaintiff's consent, was justified by the issues and the evidence.

9. ———: DAMAGES: PERSONAL PAIN: INSTRUCTION TO JURY. The plaintiff having alleged that by reason of the breach she had been "made to suffer great grief, shame and mortification, and that her affec-

tions had been very greatly wounded," etc., an instruction to the jury that in assessing damages they might consider "personal pain" suffered by the plaintiff by reason of the breach, was not erroneous on the ground that personal pain was not in issue.

*Appeal from Poweshiek District Court.*—HON. A. R. DEWEY, Judge.

SATURDAY, MAY 20, 1893.

ACTION for breach of promise of marriage. Jury trial. Verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*John T. Scott* and *H. S. Winslow,* for appellant.

*Haines & Lyman,* for appellee.

KINNE, J.—It is averred that the plaintiff and the defendant, in January, 1891, entered into a marriage engagement; that the marriage was to take place about December 25, 1891; that in April, 1891, the defendant married another woman, and thus put it out of his power to perform his contract with the plaintiff. The answer admits the marriage of the defendant and denies the other allegations of the petition.

I. The plaintiff was asked: "Do you know whether or not he [the defendant] bought his father's homestead?" The question was objected to as leading, suggestive, incompetent, and calling for a conclusion. She answered: "Yes, sir; he told me he had bought his father's place the first time I saw him after he was married." The defendant moved to strike out the answer as incompetent and immaterial,—the statement having been made since the defendant's marriage, and referring to matters occurring after his marriage. The motion was overruled. Questions so framed are not

1. EVIDENCE: leading questions.

necessarily leading. *Woolheather v. Risley*, 38 Iowa, 486; *State v. Watson*, 81 Iowa, 383. It is sometimes permissible to direct the attention of the witness to the particular fact about which information is sought. *Graves v. Merchants' Insurance Co.*, 82 Iowa, 637. The purchase of a homestead was a fact. The question did not call for a conclusion. The ruling was without prejudice, as the same fact was testified to by another witness, and was not disputed.

II. The plaintiff was also asked, on direct examination, this question: "When you heard that he was

2. BREACH of promise of marriage: evidence: effect upon plaintiff.

married, how did it affect you?" It was objected to as incompetent and immaterial, and the objection overruled. She answered, "I hated it awful bad." The question, we think, was proper. It called for facts touching her condition, mental and physical, as a result of the marriage. The answer, though not in good form, was but one way of expressing the mental condition of the witness. Besides, in the course of the trial, the answer was withdrawn from the jury. Other witnesses were asked questions relating to the plaintiff's condition after she had heard of the defendant's marriage, thus: "You may state to the jury how it affected her, or how it seemed to affect her." The court held the question was not incompetent, and the witness answered, "She didn't talk about the matter, only she was downhearted." It was competent to show how, if at all, the defendant's marriage affected the plaintiff. Her wounded feelings, mortification, and pain, if any, resulting from the defendant's breach of the contract, were all proper to be shown as elements of damage.

III. Error is assigned on the ruling of the court excluding evidence as to the plaintiff's declarations

3. ——: ——: declarations of plaintiff after breach.

made after the marriage contract was broken. We think there was no error in these rulings. The questions asked did

not indicate that they related to expressions of the plaintiff as to her feelings towards defendant before the breach of the contract.   How she felt towards the defendant after he had deceived her, and put it out of his power to fulfill his contract with her, could in no way tend to show what her feelings towards him were while the engagement lasted.   It was not proposed to show that these declarations, though made after the defendant's marriage, related to her feelings towards, or affection for, him during the time the engagement subsisted.   Moreover, the objection that the matter inquired about was not proper cross-examination was well grounded.

IV. A witness was asked what the plaintiff was doing in the way of getting ready to be married. "Do you know anything about Rosa making preparations for marriage?"   These questions were objected to as assuming a fact not proved, and the objection was overruled, and the witness answered: "Yes, sir, piecing quilts and doing fancy work."   Prior to the examination of this witness, testimony had been introduced, without objection, which showed these and other preparations for marriage.   Indeed, there appears to be no conflict in the evidence touching preparations on part of the plaintiff for a marriage.   In that respect, and in view of the undisputed evidence in the case, the ruling was correct.   But the defendant urges that the questions assumed the existence of the contract of marriage, and cites *Jones v. Layman*, 24 N. E. Rep. (Ind.) 363.   The question in that case was: "What declaration, if any, did she make in regard to her disappointment, and refusal of defendant to marry, at the time she showed you the letter?"   It will be observed that the entire inquiry was based upon the thought expressed in the question, that the defendant had refused to marry the plaintiff.   Again, the question related to a declaration

*Marginal note:* 4. ——: ——: conduct of plaintiff prior to breach.

made by the plaintiff in the absence of the defendant, after the engagement had been broken. The court held the question objectionable for the latter reason, as well as because it assumed a breach of the contract. In the case at bar the evidence called for and elicited related to preparations which the plaintiff was making for a marriage during the continuance of the engagement. Evidence of the conduct of the plaintiff, if it relates to the time covered by the engagement, or to a time when first informed of the fact that her intended husband has married another, is admissible to prove her consent to the alleged marriage and contract. We do not think the questions, as asked, were objectionable.

V. A brother of the plaintiff who had testified on direct examination that, while the defendant was keeping company with his sister, no one else was going with her, was asked: "Did you not, then, at that house on your father's farm, tell Mr. Craver, the defendant in this case, that your sister, (the plaintiff) had made a mash on Shadley there, at John Stilwell's?" An objection to the question was sustained on the ground that it was incompetent, immaterial, and irrelevant. The evident drift of this question was to show that the witness had made statements to defendant inconsistent with his testimony on direct examination. The question was clearly proper. What the answer would have been, of course, we can not say; but it was proper for the defendant to show, if he could, on the cross-examination, that he was mistaken in his statements made in his examination in chief. The ruling of the court placed an undue restriction on the right of cross-examination.

5. ——: ——: cross-examination.

VI. On cross-examination a witness testified that the plaintiff had kept company with one Mackey a short time before she began going with defendant. The court, on motion of the plaintiff, struck out this evidence as imma-

6. ——: ——: prior associations with other men: damages

terial and irrelevant. This action is assigned as error. We think the ruling was right. The defendant's claim seems to be that the conduct of the plaintiff in receiving the attention of young men prior to the time the defendant began keeping company with her is material to the question of damages. Counsel say: "The ease with which the affections became enlisted, the readiness with which she laid down the old to take up the new, and like matters, were proper subjects to be considered, if the amount of damages to be allowed ever becomes important." If such evidence, relating to a time anterior to that when the defendant began to seek plaintiff's society, is ever admissible, surely it is not under the circumstances developed in this examination. There was no evidence that the relations existing between the plaintiff and Mackey were other than those usually incident to mere friendly association. It does not appear that it was a case of love at first sight, or otherwise. Their intercourse, so far as appears, was not different from that which exists in all cases of friendship between persons of the opposite sex who do not contemplate marriage. To show such friendly association between the plaintiff and other men at a time prior to defendant's seeking her society is not material to any question involved in the case.

VII. On cross-examination, the defendant was asked several questions in relation to his property. All of them were objected to as not being proper cross-examination. The objections should have been sustained. Nothing was asked him on direct examination relating to his property. The questions were foreign to the examination in chief.

VIII. Complaint is made that the court admitted certain evidence in rebuttal which was a part of the plaintiff's case in chief. As there was no ruling, we must presume that the objection was waived.

IX.   Witness Linn Craver testified with reference to having had a conversation with the plaintiff after the defendant's marriage.   He was asked: "Now you may state whether or not, in that conversation, she said anything in regard to whether she had cared for your brother; that all she wanted was his money."   Ollie Craver also testified to a similar conversation.   She was asked the following questions:   "You may state whether or not, in that conversation, she did or did not say she had never cared anything for the defendant, but all she was after was his money?"   "I will ask you whether or not Rosa Robinson did or did not say, in this conversation, that she did not care if he was married?"  "What did she say was her feeling towards the defendant?"   These questions were all objected to as incompetent and immaterial, and one of them was also objected to as leading.   The objections were sustained. The ruling was proper as to the last two questions. Evidence of the plaintiff's statements or declarations, made soon after hearing of the defendant's marriage, and relating thereto, and expressive of her feelings towards the defendant, as they existed during the term of the engagement and before it is terminated, is admissible when it tends to show such feelings as are "inconsistent with any purpose to fulfill the engagement in a spirit befitting the relation contemplated by it." One possessed of such feelings would suffer little or no injury by reason of the breach of the contract. But evidence tending to show the feeling of the plaintiff towards the defendant after the breach of the contract, and relating only to that time, is never admissible. *Miller v. Hayes*, 34 Iowa, 496; *Miller v. Rosier*, 31 Mich. 475.   A declaration of a woman who claims to have had an engagement of marriage, whether made during the existence of the engagement, or after she learns of its breach, that she had not cared for affianced;

7. ——: ——:
declarations
of plaintiff
after breach.

that all she wanted was his money,—certainly has a tendency to show that her object in seeking the engagement was of a mercenary character; that that love and affection so necessary to the enjoyment of the married state were wholly wanting; and that an engagement consummated under such circumstances would be unprofitable, unendurable, and full of contention and sorrow. The first two questions clearly refer to the feeling plaintiff had for the defendant before his marriage. Whether she "had cared" or "had never cared" for the defendant calls for the condition of her feelings towards him as they existed when she had reason to believe that the marriage would in due time be consummated. The last two questions may be said to relate to her feelings as they were at the time she made the statements, if any, and hence were properly excluded.

X. Error is assigned on the giving of an instruction to the effect that, if the jury found that the parties 8. ——: pleading: had entered into a marriage contract, the instructions to jury. admission by the defendant of his marriage to another woman would constitute a breach of it, and the plaintiff would be entitled to recover. It is said that there was evidence tending to show that the engagement had been broken, and that the instruction assumed that the evidence failed to establish that fact. There was no issue under which it would have been proper to submit to the jury the question of the abandonment of the contract. It was averred by the plaintiff that a marriage contract was made, and it was denied by the defendant. The defendant rested his whole case upon the fact that no contract of marriage ever existed. The case was tried by the defendant upon that theory. Furthermore, the letter which is claimed shows the abandonment did not reach the defendant until after his marriage. The instruction, under the issues, was correct.

XI.  Exception is also taken to an instruction of the court wherein he told the jury that in assessing damages they might consider, among other things, "personal pain" suffered by plaintiff by reason of the breach of the contract.

*9. ——: damages: personal pain: instruction to jury.*

It is insisted that "personal pain" means physical suffering, instead of mental distress or mental suffering, and it is said the question of "personal pain" was not in issue.  The petition avers "that the plaintiff has been, by defendant, made to suffer great grief, shame and mortification, and her affections have been greatly wounded," etc.  This court has said that in this class of cases "the distinction between injury to the feelings and affections and personal pain and mortification for disappointment is too shadowy to receive practical recognition."  *Royal v. Smith*, 40 Iowa, 618.  Webster defines pain as "mental distress; anxiety; grief; anguish."  It may well be said that the pain would be "personal," as much so as if it was purely physical.  The instruction is unobjectionable.

The many other errors assigned we find to be without merit.  For the reasons given, the judgment of the district court is REVERSED.