FANNIE EDWARDS v. ISAAC EDWARDS, Appellant.

**Contract: Breach of Promise.** An allegation that plaintiff and
3　defendant entered into a contract by which defendant agreed to
　marry plaintiff, sufficiently avers mutuality, on motion in arrest.

EVIDENCE of plaintiff's ill feeling toward defendant after he had
2　broken his promise, is inadmissible.

**Practice.** The testimony of a witness on a former trial can not be
1　read in evidence by the reporter without a sufficient showing that
　the witness is unable to attend the trial.

*Appeal from Marion District Court.*—HON. J. H. APPLE-
GATE, Judge.

WEDNESDAY, DECEMBER 19, 1894.

This is an action to recover damages for the breach of an alleged marriage contract. Trial by jury. Verdict and judgment for the plaintiff. Defendant appeals. —*Affirmed.*

*John F. Lacey, G. W. Crozier,* and *L. Kinkead* for appellant.

*Jas. D. Gamble & Hays Bros.* for appellee.

Rothrock, J.—I. It is averred in the petition that the contract to marry was entered into in the month of July, 1891. The plaintiff was then about twenty-six years of age, and never was married. The defendant was a widower. His wife died in April, 1890, leaving two children. He was then about forty-five years old, and resided on a farm which he owned. The plaintiff lived with her parents on an adjoining farm. There is a direct conflict in the testimony of the parties to the suit touching the alleged contract, the plaintiff affirming and the defendant denying the proposition. There is evidence that the defendant visited the plaintiff as a suitor, at her father's house, and that he accompanied her to social gatherings, to such an extent that his attentions to the plaintiff were quite noticeable. He took her to parties, and to the exercises on Decoration Day, and to a "baptizing," a temperance lecture, and other places. The plaintiff testified that she purchased the material for two dresses, and took it to a dress-maker to be made up, and that afterward she took the dresses home, before they were completed. The dress-maker was examined as a witness, and she corroborated the plaintiff in reference to the dresses. An objection to the testimony of the dressmaker was over-ruled. We do not think this ruling was erroneous, in view of the fact that plaintiff testified that the marriage was to take place soon after that, and that the dresses were procured "preparatory to getting married," and that the marriage was postponed.

II. It appears that there was a former trial of the case, which resulted in a disagreement and discharge of the jury. One Alice Snow was a material witness for the defendant on the first trial. She was not in attendance on the last trial, and the defendant asked permission to use her testimony on the first trial, as taken down by a shorthand reporter. The ground of this application was that the witness was in such a condition of health that she was unable to attend the trial. There is no question that the shorthand report was competent evidence, if the showing of inability of the witness to be present was sufficient. Code, section 3777. *Baldwin v. Ry. Co.*, 68 Iowa, 37, 25 N. W. Rep. 918; *Case v. Blood*, 71 Iowa, 632, 33 N. W. Rep. 144; *Bank of Monroe v. Gifford*, 79 Iowa, 300, 44 N. W. Rep. 558. The court excluded the testimony because the showing that the witness was unable to attend was insufficient. We need not set out the evidence offered by defendant on that question. We think there was no error in the decision of the court excluding the evidence. The preliminary proof was rightly determined to be insufficient.

III. The evidence shows that the defendant married a widow named Woodcock, and that he gave some attention to her while the plaintiff was away in Ringgold county, staying with her sister. There is evidence tending to show that upon the return of the plaintiff she had an interview with defendant on the subject, and that defendant then declared his purpose to marry the widow. Plaintiff was asked on cross-examination if she was willing at that time to marry the defendant. She was also asked if she said to one Edith Snyder, after the suit was brought, that if defendant "had been a young man she would not have said anything about it, but as he was an old fool she was going to make him pay for it." These questions

propounded to plaintiff all related to a time at or after the breach of the alleged contract. The only object in seeking to introduce this evidence was to show that the plaintiff did not regard the defendant with the proper love and affection to entitle her to substantial damages for her disappointment by reason of the breach of the contract. Such evidence is not competent, because it relates to a time after the courtship was at an end, and when, if the marriage contract had really existed, the plaintiff would have reasonable ground for manifesting her hostility to the defendant. See *Miller v. Hays,* 34 Iowa, 496; *Robinson v. Craver*, 88 Iowa, 381, 55 N. W. Rep. 492. It may be said further in this connection, that, if there was any advantage in showing the plaintiff's hostility to the defendant when the alleged engagement was broken off, that was amply shown by the cross-examination of plaintiff, as follows: "I said to him, if the law and man would clear him, I hoped he would sink in the blue blazes of hell." At the first examination of the abstract, we thought that certain questions asked one John Shook, in which it was sought to show that plaintiff spoke of the defendant as "Crazy Ike," and denied an engagement, occurred in Ringgold county, and while the alleged engagement to marry existed between the parties. But a close examination of the record shows that this interview occurred after the return of the plaintiff, and a short time before the suit was brought, and after the rupture occurred between the parties.

IV. The defendant made a motion in arrest of judgment on the ground that no cause of action was alleged in the petition. It was averred in the petition "that on the 8th day of July, 1891, the plaintiff and defendant entered into a verbal contract by which the said defendant promised and agreed to marry this plaintiff." It is urged that the petition is

insufficient because it does not allege a mutual promise between the parties.  While it is true that the allegation of a promise for a promise would° have been more specific, yet we think that was unnecessary, in view of the fact that there is a distinct averment that the plaintiff and defendant entered into a verbal contract.  It may be this was the statement of a legal conclusion, and that a motion for a more specific statement would have been proper.  The question presented was purely technical, and the motion in arrest was rightly overruled.

V.   There are many other objections to the effect that the court erred in improperly curtailing and limiting the defendant in the introduction of his evidence, and in the cross-examination of the plaintiff.  We discover no ground for complaint in these respects.  It is true, when the plaintiff was first on the witness stand, the court made rulings which, on reflection, were changed during the progress of the trial, and the court made the following order:  "The court is satisfied the cross-examination of the plaintiff was restricted too closely upon the three points, and the defendant will be permitted to recall the plaintiff, and cross-examine on the three matters, to-wit:  *First*, with reference to the absence of the defendant at Omaha; *second*, also with reference as to whether or not the plaintiff had any correspondence with other male friends during the time of the alleged engagement with the defendant; *third*, further, with reference to whether or not it was stated by her, and understood by her friends, she was going to Decatur county, or whatever the place was, to start a millinery store, or other business."  The plaintiff was recalled for further cross-examination, and we fail to discover that the defendant was in any way restricted in cross-examination, within the above order of the court.

VI.   A point is made because one of the plaintiff's counsel, in his argument to the jury, read certain parts from the answer of the defendant which had been stricken out on motion.   We are unable to determine from the record what part of the answer was stricken out.   The motion which was sustained attacked all of the answer but the first page.   This reference to the page must have been to the answer in manuscript, as it was filed in the court below.   It is true that the answer was long, and set up much irrelevant and redundant matter, founded upon what was claimed to be a conspiracy between the plaintiff and her father and mother, by which they collusively and maliciously set out on a common plan to entrap the defendant and put him in a false position, by which others would be led to believe he was a suitor of the plaintiff.   There are many averments of facts tending to show acts of the parties to the conspiracy.   How much of this was read, we cannot decide, and therefore we do not determine whether it was misconduct of counsel.

VII.   We have discussed all of the errors assigned and argued which appear to us to require special mention.   We discover no reason for reversing the judgment, and it is *affirmed.*