DETERMINED IN THE

## SECOND    DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1914.

---

## State Bank of Rock Island, Appellee, v. Cecil E. Bryan et al., Appellants.

### Gen. No. 5,722.

1. SUBROGATION, § 1*—*when creditor not entitled to surrender of collateral.* A creditor cannot be compelled to surrender collateral on the payment of a part only of the debt it secures.

2. PRINCIPAL AND SURETY, § 83*—*right of surety to subrogation.* Sureties paying part the debt only cannot enforce the right of subrogation in the same way and to the same extent as in cases where the entire debt is paid.

3. GUARANTY, § 31*—*when defense of loss accruing from care of collateral cannot be availed of.* In an action against guarantors on a promissory note where collateral had been pledged to secure such indebtedness and other indebtedness represented by other notes with different sureties, a defense was set up charging loss and misapplication by the plaintiff of several items of collateral and requiring the court to ascertain the rights of the defendants in the collateral not only as between themselves and the plaintiff, but also between themselves and the sureties on the other notes, who were not parties to the action, and to give to the defendants the benefit of whatever might be found to be their share of the loss accruing to all the beneficiaries. *Held* that the defense could not be allowed for the reason that all the parties interested in the application of the collateral were not before the court.

---

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

(207)

Appeal from the Circuit Court of Rock Island county; the Hon.
WILLIAM H. GEST and Hon. FRANK D. RAMSAY, Judges, presiding.
Heard in this court at the April term, 1913. Affirmed. Opinion filed
October 17, 1913. Rehearing denied April 21, 1914.

SEARLE & MARSHALL and HARRY E. BROWN, for appellants.

J. T. & S. R. KENWORTHY, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Appellee, State Bank of Rock Island, on December 17, 1906, loaned the Concrete Construction Company $7,000 on its note of that date due March 17, 1907, indorsed with a guaranty of payment signed by the four appellants, Cecil E. Bryan, its president, Harry E. Brown, A. W. Weimer and William Weimer, and also by one J. S. Wilbert, its secretary. Afterwards, February 9, 1907, the company being indebted to the Bank on this and other notes, on some of which there were other indorsers not parties to this suit, desired a further accommodation of the Bank and obtained it by depositing collateral security, not only for the new loan but also for all indebtedness of the company and of said Bryan and Wilbert to the Bank (Bryan and Wilbert were indorsers of much of the other paper.)

The collateral so deposited consisted of several items, some of which were owned by the Concrete Construction Company, the principal debtor, and some by Bryan and Wilbert each individually, and after the additional loan was made other items of collateral were deposited with the Bank by the principal debtor, or by Bryan and Wilbert, to secure the same entire indebtedness; and still another item belonging to the principal debtor, known as the Major note, was left with the Bank, but whether as collateral for the same indebtedness is in dispute.

It follows that appellee, the Bank, held all this collateral except the Major note, charged with a duty to appellants as guarantors of payment of the note in question, to use ordinary care in its control and management so that should appellants be compelled to answer on their contract of guaranty, they might, with the other sureties, be subrogated to the rights of the Bank in such collateral; and as to the Major note, the Bank was under the same duty to appellants if it should be established on a trial that it was in fact deposited as a security for the same indebtedness. But it was not to appellants alone that the Bank owed this duty, it was also bound to the sureties or guarantors on the other notes secured by the same collateral. It was in a sense a trustee of said collateral, owing a duty to every surety on a note that the collateral secured. Each surety may be said to be a beneficiary of the trust, and loss or misapplication of the collateral by the creditor might result in injury to each and every such surety. It might develop on an investigation that appellants, sureties on the note in question, were not harmed if the collateral was lost, because it might appear that had it been preserved and collected the proceeds should have been applied to the payment of another of the notes it secured, or it might develop that appellants would have been entitled to the whole proceeds had the collateral been preserved and collected by the Bank; all depending upon the law of application of payment applied to the facts as they might be determined on a hearing with all parties interested before the court. In short, appellee, Bank, owed appellants, sureties, and other persons not parties to this suit, a duty which unperformed would result in loss and damage to appellants and such other persons, in what proportion could only be ascertained by an investigation of all the facts. Had appellants paid the note and the collateral had been pledged to secure that note alone, they would have been subrogated to the rights of the creditor in the collateral; but that was not the case. A creditor

cannot be compelled to surrender collateral on the payment of a part only of the debt it secures, and it is quite clear that sureties paying a part of the debt only cannot enforce the right of subrogation in the same way and to the same extent as in cases where the entire debt is paid.

The Bank, on December 27, 1907, brought this action of *assumpsit* against said five guarantors of payment. Wilbert did not defend. Appellants filed pleas (in a part of which Bryan did not join) charging loss and misapplication by appellee Bank of several items of said collateral, averring as to some of said items that they were the property of the principal debtor and therefore defendants were discharged to the extent in value of the collateral so lost, and as to others of said items that they were the property of Wilbert and therefore the other defendants were discharged to the extent in value that Wilbert would have been bound to contribute (one-fifth) and as to others that they were the property of Bryan and therefore the other defendants were discharged as to one-fifth, etc. The pleas contained other allegations of insolvency of parties, etc., that would have made them good if the collateral had been pledged for this note alone, but they contained allegations that the collateral was pledged for this and other indebtedness, and no allegation that the other indebtedness was paid.

Appellee filed numerous replications to these pleas, concluding to the country, they covered a denial of practically every allegation of fact, and some of the replications aver that certain of the collateral had been collected and applied to items of said indebtedness for which it was pledged other than the note in suit. A jury trial began January 22, 1912, and continued until February 9th, much of the time being consumed in passing upon pleadings that were filed during the trial; then after the evidence had been in part heard, because of the sickness of the presiding judge, the trial was suspended until February 27th, when it was by

agreement of parties taken up by another judge of the circuit and proceeded to a close, resulting March 8th in a verdict for the plaintiff of $9,448.65, and thereafter to judgment on the verdict, from which this appeal is taken.

The pleadings are not all included in the record, and those that are found there are so numerous that it is difficult to tell from the abstract, or the record itself, what questions of pleading were passed on by the trial court. It may be sufficient to say that under the issues framed evidence was heard on the question whether the Major note was deposited as collateral for all the indebtedness; whether it was wrongfully surrendered by the Bank; whether if it did secure all the indebtedness there were other notes less well secured than the one in suit, to which the proceeds would have been applicable had it been collected; whether other items of collateral had been lost; and whether still others had been realized on and the proceeds applied by the creditor Bank to other notes secured by the same collateral. In short it was attempted in this suit to ascertain the rights of the defendants in the collateral, not only as between themselves and the plaintiff, but also between themselves and the sureties on other notes, who were not parties to this action, and then give the defendants the benefit by way of defense of whatever might be found to be their share of the loss accruing to all beneficiaries by negligence or misconduct of the plaintiff in caring for collateral in which they were all interested.

Appellants were liable to appellee on their unconditional written promise to pay the debt unless they had some valid defense. If the Bank had collateral to secure only the note on which they were liable, and collected or negligently lost that collateral, they could no doubt defend on that ground in this action at law, whether the collateral was received by the creditor at the time of their undertaking or thereafter. *Kirkpatrick v. Howk,* 80 Ill. 122; *Rogers v. School Trustees,* 46

Ill. 428; 32 Cyc. 217; Pomeroy's Equity Jurisprudence, sec. 1419. It is an equitable defense permitted in actions at law, well established and well settled. It has always been recognized in the courts of this State and is discussed in standard works on equity jurisprudence under the titles of "Marshaling of Securities" and "Marshaling of Assets." But the defense attempted in this case, and permitted by the court, was not that the plaintiff owed the defendants a duty that was unperformed, but that the plaintiff owed the defendants and other persons, not parties to the action, a duty that was neglected to the damage of the defendants and said other persons; and the court without these other persons before it undertook not only to determine whether there was a breach of trust, but also if there was one in what proportion the defendants and the other beneficiaries were entitled to be compensated, and that being ascertained, to allow these defendants in this suit the benefit by way of defense of what they might as beneficiaries of the trust be entitled to on an accounting and marshaling of securities.

We are of the opinion that the defense should not have been allowed. The only authority cited by counsel on that question is *Bank of Monroe v. Gifford,* 79 Iowa 300. Counsel for appellants say they find no other case dealing with that question, and there is some ground for citing that case as authority for appellant's position that the court should entirely disregard the fact that there are other persons, not before the court, interested in the collateral in question. It is a matter of common knowledge that banks often take what is termed "blanket collateral," and it would seem that similar controversies might often have arisen and found their way into text-books and reported cases. We have, however, been able to find no direct authority on the question. We do not find the case of *Bank of Monroe v. Gifford, supra,* cited on that point in any later case or text-book, and the decision rests on no cited authority.

All other cases that we have examined where sureties were permitted at law to interpose the equitable defense of loss or misapplication of collateral by the creditor are those in which all parties interested in the application of the collateral were before the court. It is in the cases and text-books oft repeated that the creditor holds pledges and collateral securities as a trustee for the benefit of all parties concerned. A court of law, in actions by creditors against sureties, permits an inquiry whether such collateral has been collected or negligently lost; and if it has, affords the defendant relief. The defendant is permitted by way of counterclaim to show that the plaintiff has violated a trust in which he, the defendant, was beneficiary and to set off the damages occasioned to him by such violation of trust. Counterclaims and set-offs must be owned by the defendant. No one would plead a set-off of a debt due from the plaintiff to the defendant and some third person; and while the defense attempted in this suit may not be, strictly speaking, a set-off or counterclaim (in Code States it is usually spoken of as a counterclaim), yet it is in the nature of such a defense. The defendants in this action would not in a direct proceeding against the plaintiff Bank be permitted any recovery for any negligence or malfeasance of the Bank in handling this collateral without making parties to the same action all other persons interested in the application of the collateral. If this is true, we do not see by what process of reasoning they can be allowed this defense in the nature of a cross-action.

Appellants say they could not pay the debt for which they were liable and thereby become subrogated to the rights of appellee in the collateral, because it secured not only this but other notes, and they would have been compelled to pay the whole indebtedness for which the collateral was pledged. This may be true; the bank certainly could not have been compelled to part with the collateral until all the notes it secured were paid.

We are of the opinion that the defense was futile even if it be true that the parties voluntarily submitted the questions involved by their pleadings. Suppose that in an ordinary action of *assumpsit* the debtor pleads a set-off, and it appears from the pleadings or the evidence that the debt sought to be used as a counterclaim is not one to the defendant alone but is due him and another person, not a party to the action. We apprehend it would make no difference if the parties had been through a long trial, without objection, on the question whether it was a valid debt, and if so what part of it belonged to the defendant. The Appellate Court could not review the record of evidence and instructions on that question, but would be compelled to say that the defense was not permissible and thus dispose of the question. We regard the defense in this case as within the same rule for similar reasons.

If in cases of "blanket collateral" securing many different obligations, with different sureties or guarantors, courts were compelled in actions at law to marshal securities in each case there might, and probably would, arise a ridiculous conflict of judgments on the different records. It seems to us, both on principal and authority, that this defense in this action should be denied; and there being no other defense interposed the judgment should be affirmed regardless of any question of error of the trial court in passing on the evidence and instructions.

The judgment is affirmed.

*Affirmed.*