## Ferguson v. The Central Iowa Railway Co.

1. **Railroads**: DAMAGES: LINE OF EMPLOYMENT. Under the facts of this case, it was held that the jury were warranted in finding that the injury was received by plaintiff in the line of his employment.

2. ————: ————: NEGLIGENCE: CUSTOMARY WAY. If the customary and usual way of doing the work of uncoupling cars in the yard was negligent and wrong, although permitted by the company, the plaintiff, being for the time in command of the train and in part responsible for the custom, cannot be heard to complain.

*Appeal from Marshall Circuit Court.*

SATURDAY, APRIL 22.

ACTION for damages for a personal injury. There was a trial by jury; verdict and judgment for the plaintiff. The defendant appeals. The facts necessary to an understanding of the questions determined will be found in the opinion.

*H. E. J. Boardman* and *A. C. Daly*, for appellant.

*Sutton & Childs*, for appellee.

ROHTROCK, J.—I. The plaintiff was in the employment of the defendant as head brakeman on a freight train. While the train was on a side track at Marshalltown, at the instance of the yard-master, and in the absence of the conductor, the plaintiff went between the engine and the car next to it, while the train was backing, and attempted to uncouple the car from the engine by pulling the pin. He failed to do so, and the train being in motion, his foot was caught by a wheel of the tender and crushed so as to require amputation. It is charged in the petition that it was the duty of the engineer in charge of the engine to obey the signals given by the plaintiff, and that said engineer, while plaintiff was attempting to uncouple the car and

engine, suddenly and without warning to plaintff, greatly increased the speed of the engine and pushed it against plaintiff with great force, and pushed him down between the engine and cars, and plaintiff's foot was caught by the brake-beam on the tender of the engine, which was placed too low down, so that he could not extricate himself, and that "when plaintiff could not get loose from the brake-beam he called to the engineer, John Armor, to stop, but he paid no heed to him, but ran the said engine faster than before    *    *    * "

There was the usual answer in denial, and alleging that the plaintiff by his own negligence contributed to the injury. The plaintiff in his testimony stated that the brake-beam on the tender was placed too low down, and that because it was too low down his foot was caught, and although he threw his body outward he could not extricate his foot and he was thus injured. He also admitted that he knew, before he attempted to make the coupling, that the brake-beam was hung too low. This allegation of the petition is all wrong, and the plaintiff was, to say the least, mistaken in stating that the brake-beam was too low down. The evidence shows beyond all controversy that it was properly placed, and in perfect order. The jury found specially that it was "in a good, safe condition."

There was no evidence in support of the allegation in the petition that the plaintiff called to the engineer to stop, and that after the call the engineer ran the engine faster than before. No outcry was made until after the injury. There is some controversy in the case as to whether or not the plaintiff was required by his employment to uncouple the cars. The defendant contends that it was the duty of the yard-master and those under his charge to do the work in the yards, and that the plaintiff was a mere volunteer in attempting to uncouple the cars. It appears that the uncoupling was for the purpose of setting out the cars next to the engine and leaving them behind. The conductor was not upon the ground and the yard-master signified what cars were to be

left, and under his direction the plaintiff proceeded to do the work. It is a matter of some doubt whether the plaintiff was, by his employment, required to perform this service. But we think the jury were warranted in finding that he was in the line of his employment, and was not for that reason precluded from recovering for his injuries. It would be unjust to draw nice distinctions, in a question like this, as to when the plaintiff was required to take upon himself the duties pertaining to his employment.

II. It is conceded that the plaintiff attempted to uncouple the cars from the engine while the train was in motion. In his examination in chief, the plaintiff states that they were "probably moving four miles an hour.". In his cross-examination he qualified his estimate of the speed by saying that it was from two to four miles an hour. He further stated that the train was at a stand, and that the yard-master gave the signal to him and that he, plaintiff, gave the signal to the engineer to back up, and that it was his, plaintiff's, duty to give the signal.

*2. —: —; negligence: customary way.*

A material question in the case is whether or not the plaintiff, in the exercise of proper care, and to free himself from contributory negligence, should have stepped forward a short distance and uncoupled the cars before giving the signal. He states in his testimony that he "might have done that," and that the train moved on his signal. He was asked this question: "You could have reserved your signal and stepped a few feet forward and went in and uncoupled? Ans. Well I might have got in the frogs there or they might have started up." There is no claim or pretense anywhere in the case that the engineer would have backed up without a signal to do so from the plaintiff, and how the plaintiff could have been injured by getting in the frogs, when the train was not in motion, it is difficult to understand.

We have given these facts in the case, touching the acts of the plaintiff as bearing upon the question of his negli-

gence, in view of an interrogatory which was submitted to the jury by the court at the plaintiff's instance and which is as follows: "Did the plaintiff perform his duties in connection with the cars in question in one of the usual ways adopted by defendant's employes and permitted by the defendant?" Ans. "Yes." The defendant objected and excepted to this interrogatory being submitted to the jury and assigns the same as error.

The evidence shows that the manner in which the uncoupling is ordinarly performed is, 1st, by standing outside the rail and reaching over and pulling the pin; 2d, by standing on the brake-beam attached to the tender; and, 3d, by standing between the rails, or with one foot between them. We are not prepared to say that under the evidence the plaintiff was negligent in stepping between the rails as he must have done, and as he admits he did. Thus far we think the question was not objectionable. But whether or not the plaintiff was justified in going between the car and the engine, while they were in motion, because this line of conduct was permitted by the defendant, is under the facts of this case quite another question. There is no evidence that any such permission was given in the way of any rule or regulation of the company. It is true, that in making up trains, and in coupling cars thereto, and it may be in some cases in uncoupling, it may be necessary to go upon the track when cars are in motion. It must be done when coupling cars in order to give direction to the coupling link. But this is not always the case. The most that can be said as to the permission of the company in this case is, that brakemen were in the habit of uncoupling when the train was in motion, and that such habit was generally known to the other employes of the company. But it is not pretended that the plaintiff would have violated any rule, regulation or requirement of his employment, if he had uncoupled the car before giving the signal to back up, or waited until his signal to slow the train had been

obeyed.   Indeed, it appears to us that under the circumstan-ces of this case the permission of the defendant to uncouple cars while in motion, at the rate of from two to four miles an hour, was an improper matter to submit to the consideration of the jury, because the plaintiff himself was for the time being in command of the movements of the train.   It was required to move or stop on his signal, and there was no re-straint upon him, and no cause for his incurring danger, either from any rule or regulation of the defendant, or by reason of any permission from it.   If it was a customary way of doing the work, and was negligent and wrong, the plaintiff himself was in part responsible for it, and should not be heard to complain.   *Kroy v. The C., R. I. & P. R. Co.*, 32 Iowa, 357.   We think the court erred in submitting the question.   It is said, however, that the submission of this interrogatory to the jury was without prejudice because it is in no manner inconsistent with the general verdict, and noth-ing is claimed for the interrogatory and answer thereto.   But this is not the test as to whether the error was prejudicial.   The jury must have been led by the question to believe that be-cause there was no evidence of a rule or regulation as to how cars should be uncoupled, and nothing showing a dissent upon the part of the defendant from uncoupling, at any rate of speed, that the plaintiff was not negligent.

That was the natural tendency of the question if answered in the affirmative, as it was.   The question would have been more appropriate if it had directed the jury to the simple inquiry, whether or not the plaintiff was guilty of negligence in going between the cars when in motion, and stepping over the rail to pull the pin, taking into account the fact that the train was under his own control.

III.   There are other errors assigned and argued.   So far as they involve the matter of instructions to the jury, it appears to us that the instructions asked to be given by the defendant were properly refused, and we have examined those given by the court on its own motion, with some care, and they seem to

fairly embody the law applicable to the case. Those relating to the rulings on evidence and to the misconduct of the jury need not be considered.

For the error above discussed the judgment will be

REVERSED.