ADAM SMITH, Appellee, v. AUGUST UTESCH, et al.,
Appellants.

85  381
98  210
99  708

1. **Fraudulent Conveyances**: HUSBAND AND WIFE: AGENCY: EVI-
DENCE. In an action to set aside a conveyance of real estate to the
wife of a judgment debtor as having been made to avoid payment
of the plaintiff's judgment, the defendants claimed that through a
series of years the husband had been acting as the agent of the
wife, and was so acting in the purchase of the land in controversy;

that the same was purchased with money received by the wife as a gift from her father, and that title thereto was taken in the name of the husband by mistake. It appeared, however, that all of the husband's business since his marriage, involving the purchase of another farm, and the leasing of several others, had been transacted in his own name, that the husband paid interest upon deferred payments of a portion of the purchase money during the time that it was claimed that the wife had the money from her father in her possession, and at one time asked for an extension of time upon such payments, and that the conveyance to the wife was not made until after the husband knew that he was liable upon certain notes upon which the plaintiff's judgment was based. *Held*, that a decree finding the conveyance to the wife fraudulent as to the plaintiff was supported by the evidence.

2. **Evidence**: WITNESSES: IMPEACHMENT. The rule that one cannot impeach his own witness does not preclude a party from showing a fact to be otherwise than as stated by his witness upon cross-examination.

*Appeal from Plymouth District Court.*—HON. SCOTT M. LADD, Judge.

FRIDAY MAY 20, 1892.

ACTION in equity in the nature of a creditor's bill, by which the plaintiff seeks to subject certain land and personal property to the payment of a judgment against the defendant, August Utesch. The defendants are husband and wife. The title to the land was formerly in the husband, and he made a conveyance to his wife. It is claimed by the plaintiff that this conveyance was without consideration, and fraudulent and void as to the creditors of the husband. The judgment held by the plaintiff was founded on a debt which was contracted before the land was owned by the defendants. There was a full trial on the merits, and a decree for the plaintiff. The defendants appeal. *Affirmed.*

*Struble, Rishel & Hart,* for appellants.

*Argo & McDuffie,* for appellee.

ROTHROCK, J.—I. There is no question as to the validity of the judgment held by the plaintiff against

1. FRAUDULENT conveyances: husband and wife: agency: evidence.

August Utesch. The indebtedness upon which it is founded was contracted in the year 1876. The land in controversy is a tract of [one hundred and sixty acres. It was purchased by August Utesch of one Hamlin, October 11, 1883. The contract price was two thousand dollars; one hundred dollars was paid in cash, four hundred dollars was to be paid October 25, 1883, and five hundred dollars January 25, 1884. These deferred payments drew interest at the rate of eight per cent. per annum. These payments were made, and on the twenty-eighth day of January, 1884, Hamlin conveyed the land to August Utesch, subject to a mortgage of one thousand dollars thereon, which Utesch agreed to pay. On the eighth day of December, 1885, August Utesch conveyed the land to Minnie Utesch, subject to the said mortgage of one thousand dollars. The claim of the plaintiff is that the land was at all times owned by August Utesch, and that the conveyance was made to his wife to prevent the collection of the plaintiff's judgment. The defendants claim that the land was purchased with the money of the wife, and that the mortgage which was assumed as part of the purchase money has been since paid with her money. There was a large number of witnesses examined on the hearing. We do not purpose to set out the testimony of the witnesses in detail. The following facts are shown by the evidence without conflict, or are so clearly proven that they may be accepted as true:

The defendants are natives of Germany. August Utesch came to this country in the year 1871, and worked as a farm laborer near Sterling, Illinois, for a time, and returned to Germany and married Minnie Peterson and returned to Sterling with her in April, 1873. The defendants went to housekeeping, and the

husband worked at farm work by the month for a time. Then they leased a farm and cultivated it as tenants. In 1876 August Utesch bought a farm of one Fahey. He worked the farm for two years, and, being unable to pay for it, he gave it up, and in 1878 he removed to Benton county, in this state, and rented a farm of one Smith for one year. Then he leased a farm of one Gemning, and farmed it until 1885, when he removed to Plymouth county, having before his removal bought the land in controversy. When he removed to Plymouth county the land in controversy was wild, uncultivated prairie. He rented land from other parties and cultivated it until his own land was improved. During all this time, and up to the time of the conveyance of the land in controversy to Minnie Utesch, all of the renting of farms, payment of money, sale of stock, in short, all the business for the family, was transacted by August Utesch and in his name. This is a strong circumstance tending to show that the business carried on was that of the husband, and not that of the wife. It is true this evidence is not conclusive, and it is claimed in behalf of the appellant that it should have no weight in this case, because the husband and wife testified that all the business was in fact her business, and that her husband was her mere agent. It is true that there are many cases where the husband acts as the mere agent of his wife in the purchase and sale of property, and no agency is disclosed, and the public suppose that the husband is the principal. But the business, as shown in this case, involves more than the ordinary business done by a husband in disposing of produce and stock raised on the farm of his wife. It involves the purchase of two farms, and the renting of several others, and all done in the name of the husband.

There is a large amount of evidence on the question as to how much money each of the defendants had when they started in life together. This evidence is

really no aid to a determination of the rights of the parties. The amounts were small, and the defendants do not really claim that the land in controversy was purchased with the money which the wife had at her marriage. They claim that the one thousand dollars which was first paid on the land was money which the wife received as a present from her father. The claim is that the identical money which she received from her father was paid for the land; and both of the defendants and John Peterson, the father of the defendant, Minnie Utesch, testified as witnesses that the gift of one thousand dollars was made a few days before August Utesch went to Plymouth county and bought the land in controversy; and the defendants both testified that August Utesch took one hundred dollars of the amount to Plymouth county and paid it on the purchase, and that the nine hundred dollars was kept by the wife until it was sent to Plymouth county, and paid on the purchase of the land. The plaintiff claims that no gift of one thousand dollars was made, and our conclusion is that the preponderance of the evidence sustains the claim of the plaintiff. We are satisfied from the evidence that John Peterson did not have one thousand dollars to present to his daughter. We cannot set out the evidence showing this to be the fact. It would unduly extend this opinion to do so. It consists of a history of his financial condition from the time of his arrival in this country from Germany, about the year 1880. There are other considerations which, in our judgment, are, to say the least, inconsistent with the claim of a gift of one thousand dollars. One is that nine hundred dollars of the amount should have been kept in the possession of the wife for several months, and not paid on the purchase, while the deferred payments were drawing interest. Another is that August Utesch sent a letter to the agent through

VOL. 85—25

whom the land was purchased, requesting an extension
of time of payment, because one of his neighbors could
not raise the money, and he would like to oblige his
neighbor.    Then there is the fact that the land was con-
veyed to August Utesch.    It is true he and his wife
both claim that this was a mistake.    But the evidence
shows quite satisfactorily that he did not convey the
land to his wife until after he knew that the claim was
made that he was liable upon the notes on which the
plaintiff's judgment was founded.

II. Counsel for the appellants contend that, as the
plaintiff called and examined August Utesch and John
Peterson as witnesses, he thereby "im-
pliedly declared that they are credible
persons, and worthy of belief, and he
cannot now be heard to say that their testimony herein
is untruthful."    Whatever merit there may be in the rule
contended for by the appellants, it can have no appli-
cation in this case, so far as it involves the one material
fact upon which the case turns.    We refer to the claim
made that John Peterson made a gift of one thousand
dollars to the defendant, Minnie Utesch.    The testi-
mony of said witnesses as to that transaction was drawn
out on cross-examination by the defendants' counsel,
and the plaintiff is not precluded from showing that
the fact is otherwise.    A party calling a witness is not
permitted to impeach him generally.    The rule as stated
in sections 442, 443, 1 Greenleaf on Evidence, is as
follows:    "When a party offers a witness in proof of
his cause, he thereby in general represents him as
worthy of belief.    He is presumed to know the char-
acter of the witnesses he adduces; and, having thus
presented them to the court, the law will not permit
the party afterwards to impeach their general reputa-
tion for truth, or impugn their credibility by general
evidence tending to show them to be unworthy of
belief; for this would enable him to destroy the witness

2. EVIDENCE:
witness: im-
peachment.

if he spoke against him, and to make him a good witness if he spoke for him, with the means in his hand of destroying his credit if he spoke against him. But to this general rule there are some exceptions; for where the witness is not one of the party's own selection, but is one whom the law obliges him to call, such as the subscribing witness to a deed or a will or the like, here he can hardly be considered as the witness of the party calling him, and, therefore, as it seems, his character for truth may be generally impeached. But, however this may be, it is exceedingly clear that the party calling a witness is not precluded from proving the truth of any particular fact, by any other competent testimony in direct contradiction to what such witness may have testified; and this is not only where it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief.''

We do not think that it is necessary to further elaborate the case. The question is, should the land in controversy be subjected to the payment of the plaintiff's judgment? The case turns upon the evidence, and a careful consideration of the whole record, leads us to the conclusion that the decree of the district court should be AFFIRMED.