JOHN F. HAAS, Administrator, v. THE CHICAGO, MIL-
WAUKEE & ST. PAUL RAILWAY COMPANY,
Appellant.

**Death of Servant: Contributory Negligence.** Though the rules
of a railroad prohibit a work train from leaving a station without orders
and provide that such orders must be shown to the fireman, the latter
is not guilty of contributory negligence because he fails to object
when the conductor orders such train out on the main tracks where
it collides with a passenger train which the fireman knew to be due
and which, as he probably knew, had not passed. Conceding that
he should have known that the train had not passed, it would not be
knowledge that his train ought not to start, if he did not know what
information the conductor had received. (1)

**Acts in Emergency.** Where one fails to jump, though warned of an
imminent collision, a charge that one confronted with sudden peril
who does what he thinks safe is not negligent, though he act
unwisely, is proper. (2)

**Excessive Verdict: WHAT IS NOT.** A verdict for eight thousand dol-
lars for the death of an intelligent man of good habits, earning two
dollars and twenty cents per day, and having an expectancy of forty
years, will not be interfered with. (See *Locke v. R'y*, 46 Iowa, 115,
and *Lowe v. R'y*, 56 N. W. Rep. 523.) (3)

*Appeal from Scott District Court.*—HON. P. B. WOLFE,
Judge.

FRIDAY, FEBRUARY 2, 1894.

ACTION to recover damages to the estate of P. W.
Davies, deceased, alleged to have resulted from negli-
gence on the part of defendant which caused his death.
There was a trial by jury, and a verdict and judgment
for plaintiff. The defendant appeals.—*Affirmed.*

*John T. Fish, White & Murphy* and *Mills &
Keeler* for appellant.

*Bills & Hass* for appellee.

| | |
|---|---|
| 90 | 259 |
| 98 | 220 |
| 98 | 551 |
| 90 | 259 |
| 6117 | 673 |
| 90 | 259 |
| 131 | 27 |
| 90 | 259 |
| 136 | 356 |
| 90 | 259 |
| f140 | 339 |

ROBINSON, J.—The plaintiff is the administrator of the estate of P. W. Davies, who was killed on the twenty-first day of May, 1890, while in the employment of defendant as fireman of the locomotive engine of one of its construction or work trains. His train left Coon Rapids in the morning of that day, in charge of Conductor Lyman, under orders to work between the place named and Dedham. An hour or more before noon the train was run into Dedham, to clear the track for a freight train known as No. 11; and the conductor there received an order that the west-bound passenger train designated as No. 3 would be fifty-five minutes late. The work train was run out a few miles, and was again taken back to Dedham. The conductor and others of the trainmen, including Davies, then took dinner in Dedham, at a place which was located about two blocks from the main railway track. The men sat at the same table while the meal was being eaten, and, it is claimed, the fact that No. 3 was late was mentioned by some of them. After they had finished eating, the men returned to the railway; the engineer and fireman going to the engine, and the conductor and rear brakeman to the depot, to inquire about train No. 2. On being informed that it was late, the conductor ordered the brakeman who was with him to throw the switch for the main line, and gave the engineer the signal to go ahead. Before that time, No. 3, if only fifty-five minutes late, should have passed the station going westward, but it was then an hour and twenty minutes late, and had not reached it. The conductor had forgotten the train, and did not inquire for it of the operator, and it had also been forgotten by the rear brakeman. In obedience to the signal, the engineer moved the train onto the main line, and thence eastward. When about a quarter of a mile east of Dedham, the engineer discovered No. 3, within a short distance, approaching at the rate of about for-

ty-five miles an hour.   He set the air brake, called to
Davies to jump, struck him on the shoulder in passing,
and jumped from the engine.   Davies did not jump.
There was a collision, and he was crushed between the
tank and boilerhead of his engine, dying within half
an hour.

I.   It is not disputed that the conductor was neg-
ligent in not protecting his train against No. 3, but it
is claimed that Davies should also have known that it
had not passed the station, and that he was negligent
in not calling the attention of his coemployees to that
fact, and in going out on his engine, thereby contribu-
ting to the cause of his death.   The rules of defendant
in force, at the time of the accident, contained the fol-
lowing:   "The safety of passengers and trains is of the
first importance, and all operations of working and
repairing the road must be subservient thereto."
"(98) All special orders for the movement of trains
must be addressed to the conductor and engineer, of
which three copies shall be made.  * * *"   "(100) A
train must not leave a station, when directed to run by
special order, unless the conductor and engineer have a
copy of the same in their possession."   "(101) Conduct-
ors must in all cases show telegraphic orders pertain-
ing to movement of trains to the rear brakeman, and,
when practicable, to the forward brakeman.   Engineers
must in all cases show the same to the fireman, and
when practicable, to the forward brakeman.   Brake-
men and firemen must report every instance when con-
ductors and engineers fail to comply with this rule."
The order in regard to train No. 3 was dated at Perry,
was addressed to the conductor and engineer, and read
as follows: "No three (3) will run fifty-five minutes
late from Perry to Co. Bluffs."   It was received by the
conductor and engineer at 10:53 o'clock in the fore-
noon.   The conductor read his copy of the order to
the rear brakeman, the forward brakeman being ab-

sent, and Davies knew of it. The effect of the order was to permit the work train to use the track for fifty-five minutes immediately following the schedule time of No. 3, or, as stated by appellant, it gave the right to the work train to use fifty-five minutes of the schedule time of the passenger train, and no more. It is said that the work train moved only by special orders, and as an irregular train of an inferior class. It was required to keep out of the way of all regular passenger and other trains. The superintendent of the division of that part of the railway on which the accident occured states that work trains are run wholly by special orders, and have no existence except as given by telegraphic order; but that was not true to the extent claimed. The general movements of work trains depended upon telegraphic orders, which directed the conductor and engineer where the train should be worked, and informed them in regard to other trains; but the manner in which the orders should be observed was necessarily left largely to the discretion of the conductor, and it was, ordinarily, the duty of the other trainmen to obey his orders.

If the claims now made by appellant are well founded, then it was the duty of the trainmen to refuse to obey the directions of the conductor until they had first satisfied themselves that the directions were authorized by the telegraphic orders; and when a discretion was lodged in the conductor it would have been their duty to refuse obedience unless they should approve his orders as within that discretion. It is scarcely necessary to say that such a rule would destroy the discipline essential to the proper management of trains, and we find nothing in the record which requires that it be enforced in this case. Whether Davies knew that No. 3 had not passed when the conductor ordered his train out onto the main line is not shown. It is probable, but not certain, that he would

have heard the train had it gone through the station while he was at dinner. But, conceding that he should have known that it had not yet arrived, it does not follow that he knew his train should not have been ordered out. He knew he had not seen a telegraphic order which announced any further change in the time of No. 3, it is true, but he did not know what information the conductor had received. It may be said that it was his right to see the order, if one had been received, and that until he saw it he should have acted on the presumption that none had been sent, but such a course on his part was not required by the rules. They provided that train and engine men should be held equally responsible for the violation of any of the rules governing the safety of the trains, and that they should take every precaution for the protection of trains, even if not provided for by the rules; but they also provided that the conductor should have charge and control of the train and of all persons employed on it, and made him responsible for its movements while on the road, "except when his directions conflict with the rules or involve risk or hazard," in either of which cases the engineer was to be held alike accountable. Brakemen and firemen were required to report every instance when the conductors and engineers should fail to show their telegraphic orders as provided by rule 101, but we find nothing in the rules which required them to disobey the orders given. The provision holding them equally responsible for the violation of the rules governing the safety of the train must be given a reasonable construction. It applied to each one within the range of his own duties, and did not make him responsible for the wrongful actions or omissions of others. It is said that Davies and all the other trainmen forgot all about No. 3. That is not shown by the evidence, although the rear brakeman testified to that effect; but it is evident that he had no

means of knowing the fact in regard to the engineer and fireman. The conductor and rear brakeman forgot it. The engineer remembered it, but, as the conductor had just come from the telegraph station when the signal to move was given, he concluded that the train had passed. It is not shown that Davies had forgotten it, nor is it shown that he knowingly went into a place of danger, and the jury may well have found that he was not negligent in remaining at his post.

II. The appellant complains of the fifth paragraph of the charge to the jury, which is as follows: "5 You are, however, in this connection, to remember that, when a person suddenly finds himself exposed to great peril and danger, and is obliged to act upon the spur of the moment, it is not necessarily negligence if, under such circumstances, he did what he thought was for the best for his own safety, although what he then did may not be the right thing, or what he would have done in cooler moments and when he was free from excitement." The ground of the complaint is that there is no evidence to justify it. It is said that the responsibility of Davies must be judged from what he did or failed to do when his train was ordered onto the main track, and that the instruction was not applicable to him as he was situated at that time. But it referred to his situation at the time of the collision. The engineer spoke to and struck him to warn him of the danger, and then jumped from the train, thus saving himself. Had Davies also jumped, he might have escaped injury; and the court correctly charged the jury in regard to his duty, and the weight to be given to his conduct under such circumstances.

III. The appellant contends that the amount of the verdict is excessive, and that the jury were not properly charged in regard to the measure of damages. We discover no error in the charge in that respect. The amount allowed was eight thousand dollars, and we

can not say it was excessive. The expectancy of life of the decedent was a little more than forty years, and his earnings were two dollars and twenty cents per day. He was of good habits, free from disease, and intelligent. The damages in such a case can not be determined accurately. There was evidence upon which to base the verdict rendered, and we do not think it should be disturbed. See *Locke v. Railway Co.*, 46 Iowa, 115; *Lowe v. Railway Co.*, 56 N. W. Rep. (Iowa) 523.

IV. What we have said disposes of the controlling questions in the case. Some objections are urged by appellant which we have not mentioned in detail, but we have examined them all, and conclude that the record does not disclose any error prejudicial to the defendant. The judgment of the district court is AFFIRMED.