GEORGE STRONG v. THE CHICAGO & NORTHWESTERN
RAILWAY COMPANY, Appellant.

**Negligence:** CATTLE GUARD: JURY QUESTION.  Plaintiff's testimony
simply showed that the guard consisted of eight ties, eight inches
wide, laid six or seven inches apart, the bottom of the pit being
twenty-one inches below the top of the ties.   Defendant showed
that, so far as a witness knew, all other roads did not use iron
guards, also that iron guards would not turn stock as well as the one
in controversy and that he knew of none that would absolutely turn
stock.   In rebuttal it was testified that guards like the one in suit
were not in general use by other roads.   *Held,* a verdict for defend-
ant should have been directed.

*Appeal from Linn District Court.*—HON. J. H. PRESTON,
Judge.

FRIDAY, MAY 31, 1895.

Plaintiff states as his cause of action, in substance,
as follows:   That prior to April 9, 1892, "defendant
had carelessly and negligently constructed and main-
tained" a certain cattle-guard at a highway crossing.
That "said imperfect construction consisted more par-
ticularly in placing broad and flat timbers so close
together as to leave too small a place between them to
serve the purpose of a proper cattle-guard.   That the
pit over which the same was placed was very shallow,"
so that the cattle-guard was insecure and unsafe, and
would not turn stock.   He alleges that on said ninth
day of April two horses belonging to him, of the value
of one hundred dollars each, were running at large,

without his knowledge; that one of defendant's freight trains approached said cattle-guard from the east at a great and negligent rate of speed, and so frightened said horses that they ran over said cattle-guard, and on to the bridge beyond, within the inclosed right of way; that defendant's employes carelessly, negligently, and wrongfully ran said engine and train at a high rate of speed after said horses, chasing and driving them on to and over a bridge in the defendant's roadbed, whereby said horses were so injured that it became necessary to kill them. The defendant answered, denying generally, and upon these issues the case was tried to a jury, and a verdict and judgment for the plaintiff. Defendant appeals.—*Reversed.*

*Hubbard & Dawley* for appellant.

*Smith & Clemans* for appellee.

Given, C. J.—At the close of the evidence for the plaintiff, and again at the close of all the evidence, defendant moved for a verdict upon the ground that there was no evidence to sustain a verdict for plaintiff, which motions were overruled. After the verdict the defendant moved for a new trial upon the grounds, among others, that "the verdict is not supported by sufficient evidence, and is contrary to the evidence." This motion was also overruled. It will be observed that the negligence charged is imperfect construction of the cattle-guard in particulars stated, and in running the engine at a high rate of speed after the horses. We have examined the record with care, and fail to find any evidence whatever tending to establish either charge of negligence. Several witnesses were called for the plaintiff, who agreed in describing the construction of the cattle-guard as follows: That it was formed of eight ties, eight inches wide on top and six inches

deep, laid crosswise of the track, on stringers six to seven inches apart, the bottom of the pit being twenty-one inches below the top of the ties. No witness for the plaintiff was asked to state, nor was any reason given, why such a cattle-guard was not reasonably safe for the intended purpose. After plaintiff rested, S. H. Brown was called for the defendant, and testified that he was road master for the defendant. He testified to the construction of the cattle-guard substantially as the other witnesses, and to his experience with various kinds of cattle-guards, and that he knew of none that would absolutely turn live stock. A number of questions were asked of this witness by the defendant, to all of which plaintiff's objections were sustained. The general tenor of these questions was whether, from his knowledge and experience, he thought this cattle-guard was reasonably safe to turn live stock, and whether it was as good as any in use; also whether or not cattle-guards ordinarily in use along defendant's road had ties the same distance apart, and the same depth of pit, as this. On cross-examination this witness stated that it was not true, so far as he knew, that all other roads had discarded this sort of cattle-guard, and that the iron cattle-guards do not turn stock as well as the pit cattle-guard does. Plaintiff called a witness in rebuttal, who, after stating his experience as conductor, fireman, and brakeman, was asked as follows: The construction of this cattle-guard was stated to him, and he was asked: "State whether or not that is the style of cattle-guard that is in ordinary use by various railroad companies at this time, or was a year ago in June." To this he answered: "Well, not in general use; it is not." It will be seen from this statement of the evidence that at the time the plaintiff rested there was no evidence whatever that the defendant was careless or negligent in the construction and maintenance of this cattle-guard, and

following this we have the single statement of the witness quoted above. It seems to us entirely clear that there was a total absence of evidence of negligence in the construction and maintenance of the cattle-guard.

As to the allegation that defendant's employes "did carelessly, negligently, and wrongfully run the engine of defendant at a high rate of speed after the two horses," there is not one syllable of evidence. A. L. Sloan, called by the plaintiff, testified that he was the engineer; that when he first saw the colts they were jumping the cattle-guard; that he was within sixty rods of them; that when he saw the colts he tried to stop the train; "I reversed the engine, and applied the air, put on sand, called for brakes, and stopped as soon as I could." He states that he got off the engine, for fear he would be killed; that it is dangerous to strike horses or cattle in a cattle-guard or trestle; that the engine did not strike the horses; that it stopped before reaching the trestle; and that the horses ran some distance on to the trestle, and were injured by falling through. Mr. Borghart, who was near by at the time, corroborates the engineer. It will be seen that in this evidence there is nothing whatever to indicate that the train was carelessly or negligently run after the colts were seen by the engineer. It appears that the defendant's road is crossed at right angles, overhead, by the Burlington, Cedar Rapids & Northern Railway, a few rods east of this cattle-guard, and that the embankment of said road obstructs the view to the right and left of the defendant's right of way, for some distance west. It was for this reason that the engineer did not and could not see the colts until they were on or very near the track in the highway crossing.

It seems to us quite clear that the court erred in not sustaining the defendant's motion for verdict and for a new trial.—*Reversed.*