H. L. SPAULDING, Administrator, v. THE CHICAGO, ST. PAUL & KANSAS CITY RAILWAY COMPANY, Appellant. .

**Damages.** Damages for the death of a brakeman not be limited to a sum, interest on which will produce his probable earnings during the probable term of his life, but should be such as will compensate his estate.

**Jury Question:** CONTRIBUTORY NEGLIGENCE. Whether a brakeman was guilty of contributory negligence in attempting to uncouple moving cars, during which attempt he was killed, is, on conflicting evidence as to whether such an attempt was negligent or not, a question for the jury.

**SAME:** *Jury question.* It appeared that deceased was an experienced brakeman; that his foot caught in a frog in defendant's yard; that the frog had been left unblocked, and the road-bed unsurfaced near it; but that intestate did not know this fact. *Held,* that there was no presumption of negligence because he was uncoupling the cars while they were in motion, but it was a question for the jury to decide whether, under the circumstances, he was negligent.

**HARMLESS ERROR.** While it was not proper to allow the witness to testify as to the amount of insurance she had received from the policies on intestate's life in the absence of anything to show the cost of the insurance, it worked no prejudice in this case.

**Evidence:** EARNINGS OF DECEDENT. Evidence of the amounts of money sent by a railway employe, who had been killed through the negligence of the company, to his relatives, and of the amounts invested by him in life insurance, is competent, in an action to recover for such negligent killing, as tending to show decedent's earning capacity and habits of frugality.

**IMPEACHMENT.** It was not error to allow plaintiff to refresh the memory of a witness, who was an employe of the defendant, by reading a transcript of his evidence given on a former trial of the cause; the witness being to some extent hostile to plaintiff.

| | |
|---|---|
| 98 | 205 |
| 107 | 237 |
| 98 | 205 |
| 112 | 444 |
| 98 | 205 |
| 113 | 130 |
| 98 | 205 |
| e114 | 153 |
| 98 | 205 |
| 119 | 533 |
| 98 | 205 |
| 120 | 153 |
| 98 | 205 |
| 127 | 24 |
| 98 | 205 |
| 128 | 284 |
| 98 | 205 |
| f133 | 495 |
| 98 | 205 |
| 136 | 737 |
| 98 | 205 |
| 138 | 184 |
| 138 | 277 |
| 98 | 205 |
| 144 | 341 |

*Same.* Where one of plaintiff's witnesses was an employe of the defendant, it was not error to allow plaintiff, on re-direct examination, to question the witness regarding certain conversations he had had with defendant's attorneys at the former trial, and the information he had given them respecting his knowledge of the case.

PLEA AND PROOF. In an action for the death of a brakeman, whose foot was caught in an unblocked frog, where he attempted to make a coupling, evidence of the kind of couplings used on the train, is competent to show what decedent was compelled to do in using them, even though the couplings themselves are not charged to have been defective.

RE-DIRECT EXAMINATION. A commendatory letter from an officer of a railway company to a discharged employe, whose credibility as a witness for the plaintiff. in an action against the company, was sought to be affected by such discharge, is admissible in evidence, where it tends to explain fully the cause of the discharge.

**Evidence:** RULE INVOKED BY COMPLAINING PARTY. Evidence that it is no more dangerous to uncouple moving than stationary cars, is competent, in an action against a railway company for the death of a brakeman, injured while coupling cars while in motion, in rebuttal of evidence, received by the court over plaintiff's objection, that the uncoupling of moving cars is more dangerous.

USING TRANSCRIPT. Testimony of witnesses given on a former trial, is admissible on a second trial of the same action, where it is shown that a subpœna has been issued for such witnesses, and placed in the hands of an officer for service, and that he made diligent effort to find them within the county, but was unable to do so.

WAIVER OF RULE. Evidence that the officers of a railway company knew of the violation by its employes, of a rule forbidding them to couple or uncouple cars while in motion, and acquiesced in such violation, is admissible in an action to recover for the death of a brakeman killed while uncoupling cars in motion, where one of the defenses interposed is that he violated such rule.

*Same.* Where it is claimed that a rule is waived on the whole system, it may be shown that its violation was acquiesced in, at a point on the road embraced in decedent's run, other than where he was injured while disobeying such rule.

**Appeal:** HARMLESS ERROR. The admission of incompetent preliminary evidence, as a foundation for the admission for other evidence, is not prejudicial error, where a sufficient foundation for such other evidence was laid without taking into consideration such incompetent evidence.

*Appeal from Howard District Court.*—Hon. W. A. Hoyt, Judge.

## Thursday, May 14, 1896.

Action at law by the administrator of the estate of Charles Hanley, deceased, to recover damages resulting from the death of Hanley, which is alleged to have been caused by negligence on the part of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals. —*Affirmed.*

*Lyon & Lenehan* and *H. T. Reed* for appellant.

*Butts & Jacques, H. L. Spaulding,* and *John McCook* for appellee.

Robinson, J.—On the night of the fourth day of May, 1892, the decedent was in the service of the defendant, and, while engaged in the line of his employment, received injuries which caused his death. The facts relating to the accident, which are admitted, or are clearly established by the evidence, are substantially as follows: At the time in question, the decedent was the head brakeman on a freight train of the defendant. His run was on the division of its road which extended from Elma, in this state, to St. Paul, in Minnesota. On the third day of May, he went with his train from St. Paul to Elma. It was his duty to go on with a train from Chicago, which was scheduled to leave Elma for St. Paul, between 5 and 6 o'clock in the afternoon of the next day. It contained about twenty-three cars. When it arrived, it was the duty of the crew to which Hanley belonged to take charge of it, change the engines and caboose, and do some switching. In the railway yard at Elma there were

numerous tracks, among which were the passing-track and the lead-track. These tracks came together in the northerly portion of the yard, but, further south, were separated from each other by a considerable distance, and between them were at least four side-tracks, which were connected with the lead-track by means of switches, and which were numbered from east to west. When the train arrived, it was placed on side-track No. 4, the fresh engine was backed from the round-house to the train, and coupled to it, and then it was drawn onto the lead-track, until the rear of the train was north of switch No. 2. The train was then backed onto the side-track No. 2, on which the caboose to be taken out stood, for the purpose of coupling to the caboose, and also for the purpose of cutting out the fourth, fifth, and sixth cars from the engine, and placing them on another track. When the engineer commenced backing the train onto side-track No. 2, Hanley was in his proper place on the forward part of the train, and it was his duty to uncouple the sixth car from the seventh, when the train had been backed a sufficient distance onto the side-track. When that should be done, the first six cars were to be drawn onto the lead-track, the cars to be cut off were to be set out on the track where they were to be left, and the first three cars and the engine were then to be coupled to the remainder of the train on side-track No. 2. The night was so dark that Hanley could not be seen by the other train-men when the train was backed onto side-track No. 2, and his position and movements were known only by observing the lighted lantern which he carried. When that approached switch No. 2, it disappeared from the top of the car on which he had been standing, going over the east side, as though he was descending to make the uncoupling. Nothing was seen of him or his lantern from that time until the engine had reached

the frog between the first and second side-tracks, when the engineer heard some one crying out, and, looking down, saw Hanley on the ground. The engine was stopped, and he was found lying on his left side, his face toward the south. His right foot had been caught in the frog, and cut off, and his left foot was badly injured. The frog was unblocked, and the foot which had been cut off was wedged in between the rails, and pointed south. Hanley received attention at once, but died from the effects of his injuries within a short time. It does not appear that he gave any explanation of the accident, excepting a brief statement made immediately after it occurred, while he was on the ground; and what he then said is a matter of controversy. Employes of the defendant had been working about the frog on the day of the accident, and there is evidence which tends to show that they left it and the track near it in an unsafe condition. The plaintiff charges that the defendant was negligent in failing to block, or otherwise protect the frog, and in failing to fill up and surface the track between the ties in the vicinity of the frog, and that the accident was caused by such negligence. It is the theory of the plaintiff that Hanley descended from a car while the train was being backed onto switch No. 2, for the purpose of making an uncoupling between the sixth and seventh cars, preparatory to setting out the three cars which were to be left on another track; that he went between the cars for that purpose, while the train was in motion; and that, in moving with the train while between the cars, his foot was caught in the frog, and the injuries described were inflicted. The defendant denies all wrong on its part, and claims that the accident resulted from the fault of Hanley in being intoxicated, and unfit to perform his duties, when the accident occurred, in violating rules of the company, which he

was under obligations to obey, and in attempting to make the uncoupling in a negligent manner. Two trials were had in the district court. On the first trial, a verdict for three thousand five hundred dollars was returned in favor of the plaintiff. That was set aside on application of the defendant, and the second trial had, which resulted in a verdict and judgment for the plaintiff in the sum of five thousand dollars.

I. The witnesses who had personal knowledge of the movements of Hanley and of the train, at the time of the accident, and who found him after it occurred, were employes of the defendant. Their testimony was essential to enable the plaintiff to establish a case, and they were placed upon the witness stand by him. Their testimony was not satisfactory to him, and he was permitted by the district court to refresh their recollections by reading somewhat freely from a transcript of their evidence given on the first trial. In what was thus done, we do not find any error. Although it is a general rule that a party may not impeach his own witness by introducing evidence to show that he is unworthy of belief, yet a party surprised by the testimony of a witness may call his attention to conflicting statements made at another time, not for the purpose of laying the foundation for impeachment, but to test and quicken his recollection, and give him an opportunity to correct his testimony, and to show that it has surprised the party who called him. *Hall v. Railway Co.*, 84 Iowa, 313 (51 N. W. Rep. 150), and authorities therein cited. See, also, *Smith v. Utesch*, 85 Iowa, 386 (52 N. W. Rep. 343; *State v. Cummins*, 76 Iowa, 135 (40 N. W. Rep. 124). The witnesses in question did not testify on the second trial in all respects as they did on the first, and the variance was usually in the interest of the defendant. It seemed that they were inclined to aid the defendant, and they were, to

some extent, hostile to the plaintiff. Under those circumstances, it was proper to call their attention to the testimony they had given on the first trial; and, although the district court was somewhat liberal in admitting their former testimony, we do not think any abuse of its discretion in that respect is shown.

II. The plaintiff was permitted to show the kind of couplings used on the train, with which Hanley was working. No complaint of the couplings was made, but it was proper to explain what they were, and how they were operated, in order to show what Hanley was required to do to make the uncoupling in question.

III. One of the witnesses for the plaintiff, who was in the employment of the defendant, was Boysen. After his cross-examination was ended, the plaintiff was permitted to question him in regard to conversations had between him and the attorneys for the defendant at the former trial, and the information he had given them with respect to his knowledge of the case. In view of the relation of the witness to the defendant, and his testimony on the two trials, we do not think the court erred in permitting the re-direct examination. It enabled the jury to estimate more accurately the value of the testimony given by the witness. And this is true of the cross-examination of the witness Farrell.

IV. The train with which Hanley was working, was moving at the rate of from four to six miles an hour when the accident occurred. Testimony was introduced on the part of the plaintiff to show that it was the custom of the employes of the defendant to uncouple cars while they were in motion; that it was as safe to do so as to uncouple them when not in motion; that the decedent attempted to make an uncoupling in question in the manner usually adopted on the defendant's road; and that the officers of the

defendant, who had supervision and control of such matters, knew of that method of doing such work, but made no objection to it, although it was in violation of printed rules, which the defendant had adopted and given to its employes (including the decedent), for their guidance. We are of the opinion that the testimony thus given, was relevant and competent. A railway company cannot escape liability by showing a violation of rules which are never enforced, and which are habitually disregarded, with the knowledge and apparent acquiescence of officers whose duty it is to enforce them. *Lowe v. Railway Co.*, 89 Iowa, 425 (56 N. W. Rep. 519); *Strong v. Railway Co.*, 95 Iowa, 278 (62 N. W. Rep. 800). The evidence in question tended to show, that the rules upon which the defendant relies were habitually disregarded by its employes, and that the officers who were charged with the duty of enforcing them knew that the employes of the defendant, customarily disregarded them, but made no attempt to enforce them. The alleged negligence of the deceased was a question of fact for the jury; and, in deciding it, the customary way of doing the work he attempted to do, apparently approved by the defendant, was a proper matter for the consideration of the jury. In connection with the alleged waiver of the rules, it is insisted that the court erred in permitting a witness to state the custom with respect to the handling of trains in the yards of the defendant at St. Paul. The run of Hanley included that city. The rules in question were general, apparently applying to the entire railway system of the defendant; and it was proper to show that they were waived by it, especially where Hanley was required to work. To avoid repetition, we may say here that the evidence fully warranted the jury

in finding that the rules upon which the defendant relies had been waived by it, and were not in force.

V.  One of the witnesses for the plaintiff was C. D. Graves.  At one time he had been employed at St. Paul, by the defendant, but was not working for it at the time of the trial.  He was examined by the defendant in regard to his discharge, and, on his re-direct examination, produced a letter from the defendant's superintendent of terminals at St. Paul, commendatory in character, which related to his discharge.  That letter was read in evidence.  It was of a nature to explain more fully the cause of his leaving the employment of the defendant, concerning which it had inquired on cross-examination, and was properly received in evidence.

VI.  Mrs. Maddigan, a sister of the decedent, was permitted to testify that she had received from him, during his life-time, various sums of money, which amounted to eight hundred dollars, and perhaps more; that she had visited him in St. Paul, and that he had paid for her support while she was there; that she had received, since his death, insurance on his life, to the amount of two thousand dollars.  It was competent to show the amount of money which he had sent to the witness and to others, as tending to show his ability to earn money, and his habits with respect to saving it; and for the same reason it was competent to show that he had invested some of his earnings in life insurance.  We do not think it was proper to prove the amount paid by the companies on his policies of insurance after his death, as there was nothing in the evidence offered for that purpose which tended to show what the insurance cost; but we are of the opinion that the testimony improperly admitted could not have been prejudical to the defendant.

VII.   The plaintiff was permitted to read, in rebuttal, the transcript of the testimony given by two witnesses on the first trial, who were not present at the second one.  Before that was done, it was shown that a subpœna had been issued for the witnesses, and placed in the hands of an officer for service;  that he attempted to find the witnesses for the purpose of serving the subpœna, and for that purpose inquired of members of their families, and was told that the witnesses were not in the county,—that one was in Cedar Rapids, and the other in South Dakota.  Other persons testified, from knowledge gained in the neighborhood, that the witnesses in question had left the county.  The appellant objects to the testimony thus given, on the ground that it was hearsay and incompetent.  Some of it was open to the objection made.  *Baldwin v. Railroad Co.*, 68 Iowa, 41 (25 N. W. Rep. 918).  But we are of the opinion, that the testimony of the officer was competent.  It was his duty to serve the subpœna on the witnesses named, if he could do so within his county, and his testimony showed that he made diligent effort to ascertain where they were.  The facts disclosed by his evidence would have justified a return on the subpœna, that the witnesses could not be found in the county.  It is said in argument, that the subpœna was introduced in evidence, but we fail to find any record to that effect.  The objections made by the defendant were not, that the evidence offered was not the best which was available, and we think, it was properly received.  1 Greenl. Ev. (Fourteenth Ed.), section 101.  As evidence of that nature was of a preliminary character, and addressed to the court, the defendant was not prejudiced by the introduction of incompetent evidence, as a sufficient amount of that which was competent, was given to authorize the introduction of the testimony of the

absent witnesses, and the method of giving it was authorized. *Bank v. Gifford*, 79 Iowa, 311 (44 N. W. Rep. 558), and authorities therein cited.

VIII. The plaintiff submitted, in rebuttal, the testimony of several witnesses, who testify, in effect, that it was not more dangerous for Hanley to attempt to make the uncoupling as he did, than it would have been, had the cars not been in motion. The appellant contends, that this testimony was not rebutting; that it was incompetent; that the matter inquired about was not a proper subject for expert testimony; and that the questions answered by the witnesses were the ones which the jury were required to determine. The defendant introduced evidence to the effect, that it was more dangerous to attempt to make an uncoupling when the cars were in motion than when they were not; therefore, the testimony in question was rebutting in its nature. It may be conceded, for the purposes of this case, that the testimony in question was not upon a subject in regard to which expert testimony was competent, and that it gave conclusions, which it was the province of the jury to reach; but it does not follow that the defendant has sufficient ground to complain of the ruling of the court in admitting it. The evidence of the defendant, to which we have referred, was introduced, notwithstanding the objection of the plaintiff, that it was incompetent, irrelevant, immaterial, and the conclusion of the witness. Having insisted that the evidence was proper, and secured its admission for itself, the defendant cannot object that the plaintiff was permitted to introduce evidence of the same character. I. was the duty of the court to give to both parties the benefit of the same rules of evidence, and the defendant cannot justly complain that the plaintiff was given the benefit of a ruling that was made upon its demand. See

*Ingram v. Wackernagel,* 83 Iowa, 88 (48 N. W. Rep. 998); *Kendall v. City of Albia,* 73 Iowa, 245 (34 N. W. Rep. 833); *Frost v. Rosecrans,* 66 Iowa, 407 (23 N. W. Rep. 895); *Hale v. Philbrick,* 47 Iowa, 219; *Artz v. Railroad Co.,* 44 Iowa, 285; *Wallis v. Randall,* 81 N. Y. 166. The first testimony of the character of that in question, was given by a witness for the plaintiff during his cross-examination, in response to questions asked by the defendant. It would be grossly unjust to permit the defendant to profit by an error for which it was responsible. Some of the witnesses for the plaintiff were asked questions of a hypothetical nature, or based upon testimony given by other witnesses, in regard to the danger in cutting a train in motion, as compared with the danger involved in cutting it while standing. In so doing, the plaintiff extended somewhat the application of the ruling which had been adopted for the benefit of the defendant, but kept within its legitimate scope.

IX. The appellant claims that the plaintiff failed to show that Hanley was free from negligence in attempting to make the uncoupling, and that he has failed to show that the defendant was negligent. No one saw Hanley after he descended from the car until after the accident occured, and what happened during that interval must be determined from circumstantial evidence. It was not necessary for the plaintiff to show by direct evidence that Hanley was free from negligence. To determine whether he was negligent, it was proper for the jury to "give due weight to the instincts and presumptions which naturally lead men to avoid injury, and preserve their own lives." *Way v. Railway Co.,* 40 Iowa, 345; *Adams v. Iron Cliffs Co.,* 78 Mich. 271 (44 N. W. Rep. 270). It is sufficient, if it be the reasonable inference from the facts proven, that the decedent, at the time

of the accident, was in the line of his duty, and exer-
cising proper care. *Perigo v. Railroad Co.*, 55 Iowa,
331 (7 N. W. Rep. 627). The evidence fully author-
ized the jury to find that Hanley was injured while
attempting to uncouple cars in the line of his duty.
He was a careful and experienced brakeman. The
jury found specially that he was not intoxicated at
the time, and the evidence, although conflicting, sup-
ported that conclusion. The frogs in the yard at
Elma, were usually blocked, and it does not appear
that Hanley had any knowledge of the work
that had been done, at and near the frog; nor
that he knew that it had been left unblocked,
and the roadbed near it unsurfaced. From
the facts shown, and the presumption which obtains
that Hanley used due care in attempting to cut the
train, the jury was warranted in finding that he was
free from negligence. There was ample evidence of
negligence on the part of the defendant. The track,
at the frog, was not in good condition; the spaces
between the ties were not properly filled; and the
surface was rough. The blocking had been removed
from the frog. The conditions were favorable for just
such an accident as that in question, and no excuse
for them is given. Some attempt was made to show
that Hanley must have stumbled on the track, at quite
a distance from the frog, at a point where the track
was in good condition. His lantern was found near
the track, with the globe broken, and the light extin-
guished; and some of the evidence tended to show,
that it was found sixty feet from the place where
Hanley was caught in the frog. There was also some
evidence to the effect, that there was a mark between
the rails, for a considerable distance, north of the frog,
as though made by a boot heel, dragged on the ground,
and that blood and shreds of flesh were found on a
rail north of the frog. But witnesses who examined

the place of the accident soon after it occurred, did not see anything to indicate that Hanley had fallen before he reached the frog, and the manner in which the severed foot was fastened, tended to show that he had stepped into the frog, and to rebut the claim that he had fallen before it was reached. The evidence, with respect to the place where the lantern was found, was not satisfactory, and some of it tended to show, that it was near the frog. On the whole, we think, the preponderance of the evidence shows, that Hanley was caught at the frog. This is not a case for the application of the rule announced in *Ashbach v. Railway Co.*, 74 Iowa, 248 (37 N. W. Rep. 182), and followed in later cases, that "a theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and are so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent, merely, with that theory, for that may be true, and yet they may have no tendency to prove the theory." The evidence in regard to the cause of the accident, is not merely consistent with the theory of the plaintiff, but tends strongly to support it. The case of *Ferguson v. Railway Co.*, 58 Iowa, 293 (12 N. W. Rep. 293), especially relied upon by the defendant, holds that, if the plaintiff in that action was injured while doing work in a customary way, which was, however, negligent and wrong, he was, in part, responsible for it, and should not be heard to complain. The point thus decided was, that custom did not excuse negligence. But in this case, whether the way in which Hanley attempted to make the uncoupling was negligent, was a matter of dispute, which was properly submitted to the jury for determination. We cannot say that it is negligence, in law, for a person to uncouple cars in a moving train.

X.   The court instructed the jury in regard to the measure of damages as follows: "If you find for the plaintiff, you will estimate the damages to which he is entitled; and, in so doing, you will not allow anything for pain and suffering of deceased, nor wounded feelings, nor grief of his relatives, nor anything by way of exemplary damages or punishment of defendant, nor infer any fortuitous circumstance whereby the income or fortune of deceased might be increased or improved had he lived.   This suit is brought only to recover a pecuniary loss, namely, what the estate of the deceased had lost in consequence of his untimely death, and no more.   And, in determining what amount you will allow, you should take into consideration the age of the deceased, his occupation, the wages he was receiving, the condition of his health, his ability, if any, to earn money, his expenditures, and habits as to industry, sobriety, and economy, the amount of property which he had accumulated at the time of his death, if any, the probable duration of his lifetime, and all these in connection with all the evidence before you, throwing light on this question, and determine therefrom the probable pecuniary loss to the estate caused by his death, and allow the plaintiff such sum, and such only, as will compensate the estate for such loss." The defendant complains of this, and of the refusal of the court to instruct the jury that the amount of the plaintiff's recovery, if he was entitled to recover, was that sum which, placed at legal interest, would produce an amount, at the end of the probable term of life of Hanley, equal to the sum which he would probably have left had he lived to the end of that term.   In *Lowe v. Railway Co.*, 89 Iowa, 433 (56 N. W. Rep. 519), an instruction which was substantially incorporated in that given in this case was held to be unobjectionable; and it was said that the court did not err in refusing to give the

instruction for which the appellant in this case contends. The instruction we have set out was duly prepared with much care, to conform to the law as stated in the case last cited, in *Wheelan v. Railway Co.*, 85 Iowa, 176 (52 N. W. Rep. 119); *Haas v. Railway Co.*, 90 Iowa, 264 (57 N.W. Rep. 894), and other cases, and is correct as applied to the issues and evidence in this case. There was no error in giving it, and in refusing those on the same subject asked by the defendant.

XI. The defendant asked the court to submit to the jury thirteen special interrogatories. Two were submitted as asked, and the substance of a third was submitted. The appellant complains of the refusal of the court to submit the remaining ten. None of them related to a matter of controlling importance, and it was not reversible error for the court to refuse to submit each and all of them. *Scagel v. Railway Co.*, 83 Iowa, 386 (49 N. W. Rep. 990); *Whalen v. Railway Co.*, 75 Iowa, 567 (39 N. W. Rep. 894).

XII. We have discussed the questions which appear to us to be of chief importance to a determination of this case. The attorneys have presented, in argument, numerous other questions, but we should not be justified in treating them separately. Some are disposed of by what we have already said, some are unimportant, and others are scarcely more than mentioned in argument. The defendant asked forty instructions, and insists that the court erred in refusing to give many of them. We have examined them, and also the charge of the court, and conclude that the portions of the charge assailed were carefully prepared, and that they correctly expressed the law and the duty of the jury. It is neither desirable nor practicable to instruct the jury upon every proposition of law which may have a possible bearing upon the case. We think that the charge to the jury, so far as criticised, was substantially correct, and that it incorporated,

in substance, all of the instructions asked by the defendant, which it was entitled to have given. The verdict is supported by the evidence, and there does not appear to be any sufficient ground upon which to disturb the judgment of the district court. It is therefore AFFIRMED.